[ PHILADELPHIA, FEBRUARY 24TH, 1840. ]

FROMBERGER *against* GREINER.

IN ERROR.

J. F. died intestate, in 1806, leaving real and personal property, and several children, one of whom, G. F., died intestate in 1807, leaving one child, who afterwards became administrator of the goods, &c., of his father. In 1810 the real estate of J. F. was sold, in pursuance of proceedings in the Orphans' Court for a partition, &c.; and the purchase-money was received by the administrators of J. F., who retained G. F.'s share: *Held*, that the administrator of G. F. could not maintain an action to recover the amount of G. F.'s share of this purchase-money.

Writ of error to the District Court for the City and County of Philadelphia, to remove the record of an action on the case, brought by John Fromberger, administrator *de bonis non* of George Fromberger, deceased, against John Greiner and Jacob Chrystler, administrators of the goods, &c., of John Fromberger, deceased.

The declaration was in *assumpsit*, and contained six counts; two on promises to George Fromberger, deceased, viz., for money had

and received, and upon an account stated ; two on like promises to Peter Ridge, administrator of George Fromberger ; and two on like promises to the plaintiff, as administrator *de bonis non*, &c.   The pleas were *non assumpsit* and payment.

John Greiner and Jacob Chrystler both died after the commence-ment of the action, and before the trial, and the executor of Chryst-ler, the survivor, was substituted.

The facts upon which the controversy arose were principally as follows :

John Fromberger died intestate in 1806, leaving some personal property, and a large real estate, and eight children.   John Greiner and Jacob Chrystler were appointed his administrators, and on the 20th of March, 1807, obtained an order of Court to sell part of his real estate for the payment of his debts. This sale produced upwards of eleven thousand dollars.

George Fromberger, one of his sons, died intestate, in the year 1807, indebted in a small amount, leaving a widow (who afterwards died,) and one son, the plaintiff in this action.   No division of the real estate of John Fromberger, the elder, had taken place at the time of the death of his son George.

On the 16th of March, 1810, a petition was presented to the Orphans' Court by one of the heirs of John Fromberger, praying for an inquest of valuation and partition of his real estate ; in pursu-ance of which the whole real estate was sold in June, 1810, and produced about ninety-four thousand dollars, of which the share of George was about six thousand five hundred dollars. This sum was received by the administrators, and placed out by them on bond and mortgage in 1810, and so remained until 1823, when the mortgage was paid off, and the money went into the hands of Greiner, who soon afterwards became insolvent.

At the time of the sale of the real estate, one Peter Ridge was the administrator of George Fromberger.   The plaintiff afterwards obtained letters of administration *de bonis non*.   No account of the administration of this estate had been settled, nor was there any substantive evidence that all his debts had been paid.

The cause came on for trial before JONES, J., on the 22d of Janu-ary, 1839, when, after stating the above circumstances, the learned judge charged the jury in substance as follows :

" From this statement of facts it appears, that the sum claimed in this action, is a part of the proceeds of the real estate sold on the 17th, 19th and 23d of May, 1810, which was about two years after the death of George Fromberger, the plaintiff's intestate. It is indeed

(Fromberger *v.* Greiner.)

said by the plaintiff, that the defendant must show, that no part of the proceeds of the sale for payment of debts made in 1807, enters into the sum. And if the fact be, that this sum, or any part of it, arose from sales made by the administrators of John, during the life of George, the plaintiff may recover so much as administrator. Those sales produced eleven thousand five hundred and sixty-six dollars and seventy-five cents. They were carried into the second settlement, which was made January 29th, 1808, and the balance in the hands of the administrators on settlement, was only four thousand and thirty-three dollars and seventy-three cents, and there were then outstanding debts to an amount more than sufficient to absorb it. In the third settlement, payments were made by the administrators before the sale upon petition, sufficient to absorb this balance, so that in point of fact, the whole of the sum in controversy must have come from the sales of the real estate of John, made after the death of George. This appears to me to be the fact, but you will have the accounts, and will ascertain for yourselves how the fact is. The first question, and in fact the only question, which need be discussed, in this case is, whether the plaintiff or administrator can recover the share which arose from George Fromberger's purpart of the real estate. Upon the death of a person intestate, the law transmits only his personal estate, to his administrator. The real estate descends to his heirs. The letters of administration which contain the administrator's authority are expressed in conformity with this state of the law. They extend to " all the goods and chattels, and credits of the deceased at the time of his death." And those *de bonis non* extend to " all the goods and chattels, and credits of the deceased at the time of his death, which remained to be administered;" that is, all which were not administered by the first administration. The administration bond does not extend to any thing but the goods, chattels and credits of the intestate. Of course the administrator can never claim the real estate of the intestate by virtue of his letters, or money arising or accruing out of his real estate subsequently to his death. It follows of course, that when George died, so much of his share in the real estate of his father John, as was not sold, descended to his heir, and was subject to the claim of the widow, or rather her rights under the intestate laws. And the heir or widow of George had a right to proceed in the Orphans' Court to compel a partition or valuation of the estate of John. Such being, then, the manner in which the rights arising out of George Fromberger's share of his father's estate, now disposed of by the law, it follows that Mr. John Fromberger, the plaintiff, cannot as administrator receive the proceeds of the sale in the proceedings in 1810. He has no right to them as administrator. It is true that he may be entitled to it as heir of his father under the intestate laws ; but as he sues in the character of administrator, he can enforce no right in the action which Peter Ridge, the first administrator of George, could not

enforce if he were the plaintiff in the action. The decision of the action against him cannot prejudice his right as the heir of his father. He may still sue for the distributive share. And if he shall do so, then it will be necessary for the defendants to show that they have paid it according to law, or show some other defence which in point of law will operate to their discharge. Some evidence has been admitted by both parties, without objection, which would be much more proper or pertinent in an action by the plaintiff in his own right. And some testimony of the same nature has been rejected upon objection, upon the ground that if the plaintiff is entitled as administrator to recover, his claim cannot be defeated by the fact of Eliza Fromberger or his guardian having the custody of his person and estate. But enough appears both from the evidence and the arguments to show that some nice questions of law would arise in such an action; but upon this it is not necessary to express an opinion. But it is said that the administrator is the only person who is entitled to sue for the distributive share, and that their rights may as well be decided in this action as in a new one. It is sufficient to answer, that we are bound by the forms of law, and though they may in some cases be dispensed with without injury, yet they are indispensable to the safe administration of justice. But another answer is this: the Court, upon the trial of the cause, must be guided by the forms of the action and the pleadings in receiving or rejecting evidence; and in this very case I have rejected upon the plaintiff's objection, evidence which, though improper to defeat the plaintiff's action as administrator, would nevertheless be proper to defeat an action brought by him in his personal rights. It would, therefore, be unjust to make this action the means of trying the personal rights of the plaintiff, because he has taken advantage of his representative character to exclude evidence which would be pertinent in an action founded on his personal rights to the distributive share. Upon the whole case, therefore, if you find that George Fromberger died before the real estate was sold, out of which the money demanded arose, the plaintiff cannot recover in this action. Such was the opinion of the District Court upon a former trial of this cause. I should feel myself bound by the decision of the whole Court, whatever might be my individual opinion. A new trial was awarded, to give the plaintiff an opportunity to review the opinion of the Court, if he thought proper. I do not wish to be understood as intimating any opinion against the plaintiff upon his right to recover in his individual right. It certainly would be very hard for him to lose his patrimony without any default of his own. The case also of the defendant's testator is said to be a hard one, as his counsel say that his co-administrator had the whole fund and died insolvent. But these matters can be fairly and fully tried in another action, though they cannot lawfully be considered and decided in this action."

Vol. v.—45

The plaintiff's counsel excepted to this charge; and having taken a writ of error, filed the following exceptions.

" 1. That the Court below erred in charging the jury, that Mr. John Fromberger, the plaintiff, cannot, as administrator, receive the proceeds of the sale under proceedings in 1810; and that he had no right to them as administrator.

2. The Court erred in instructing the jury that the law was with the defendant as to the form of action."

Mr. *Hare* and Mr. *Meredith*, for the plaintiff in error.—The defence is merely formal and technical, and not entitled to favour in a case where the merits are not denied to be with the plaintiff. The plaintiff ought to recover as administrator, because in Pennsylvania the administrator is both by practice and decisions entitled to take the proceeds of sale of the real estate of his intestate. *M'Clay* v. *Grider*, (11 *Serg. & Rawle*, 224.)    *Guier* v. *Kelly*, (2 *Binn.* 294.)' *Commonwealth* v. *Rham*, (2 *Serg. & Rawle*, 375.)    And all such proceeds are held to be personal.    *Yohe* v. *Barnett*, (1 *Binn.* 358.) *Wishart* v. *Downey*, (15 *Serg. & Rawle*, 77.)    He is so entitled for the purpose of paying debts.    *Lee* v. *Wright*, (14 *Serg. & Rawle*, 149.)    *Lee* v. *Gibbons*, (1 *Rawle*, 105.)    *Eisenbise* v. *Eisenbise*, (4 *Watts*, 134.)    *Edwards* v. *Hoopes*, (2 *Wharton*, 426.)    Even where real estate has not been sold by a judicial sale, the administrator has been held entitled to take the proceeds. *Hege* v. *Hege*, (1 *Penn. Rep.* 90.)    *Boggs* v. *Bard*, (2 *Rawle*, 103.)

The right of action is in the heir or the administrator, one or the other. If the heir is entitled, the creditors of his father must be deprived of payment; for the land is discharged of their liens; and the fund in the hands of the heir cannot be sued for, as against him, or touched by an execution issued on a judgment obtained against the administrator; not to speak of the actual and obvious dangers of wasting or concealment without responsibility. To say that he is entitled after debts are paid, is to say that unless he chooses to pay the debts, the fund shall be locked up, or that the holders will always be equally entitled, and obliged to wait the termination of a suit against him, in which it shall be proved that there are no debts, before he can pay. It is further to put upon the heir to prove a negative, or to effect what must often be an impossibility.

The administrator is entitled, not only upon the view of the inconveniences which must attend upon vesting the right of action solely, or even concurrently, in the heir, but upon the policy of the law of Pennsylvania, which makes all things assets for the payment of debts, and which therefore makes it necessary that the administrator shall have them. He cannot indeed touch the real estate; but it is upon judgment against him that it is sold. If sold upon an execution, he is entitled to the surplus proceeds. *Guier* v. *Kelly*, (2

(Fromberger v. Greiner.)

*Binn.* 294.) *Commonwealth* v. *Rham*, (3 *Serg. & Rawle*, 375.) What reason is there why he should not be entitled to take the proceeds, when the same land is sold under proceedings in partition, which might be sold under an execution.  His responsibility is the same in both cases.  The act of April 2d, 1804, directs that the Court shall distribute the proceeds of sale according to law and justice.  The law of Pennsylvania would give the fund to him as assets; and justice to the creditors requires that it should not go into the hand of the heir.

The case of *The Commonwealth* v. *Ferree*, (8 *Serg. & Rawle*, 312,) cited by the Court below, has no application to this case.  That was a question of distribution, in which it was rightly held, that the proceeds of the wife's land actually sold in partition after her death, should be treated as real, for the benefit of her children or heirs, and not as personal, for the advantage of the husband.  If this were a question of distribution between the heirs and the wife of George, that case might have some bearing upon it, but this is a question of the right to recover the fund for the purposes of distribution, after it is received.  The administrator appears to be the person entitled to sue.

Mr. *D. P. Brown* and Mr. *Newcomb*, for the defendants in error, cited *Ferree* v. *The Commonwealth*, (8 *Serg. & Rawle*, 312.) *McClay* v. *Grider*, (11 *Serg. & Rawle*, 224.)  *Commonwealth* v. *Rham*, (2 *Serg. & Rawle*, 375.)  *Boggs* v. *Bard*, (3 *Rawle*, 103, 4.)

The opinion of the Court was delivered by

Rogers, J.—This is an action to recover a proportional part of the money arising from the sale of certain real property belonging to the estate of John Fromberger, deceased.  John Fromberger left some personal and a large real estate, and eight children, of whom George Fromberger was one.  George died, leaving one child, who brings this suit, as administrator *de bonis non* of his father,  After the decease of George, and after the payment of the debts of John, one of the children of John Fromberger the elder presented a petition to the Orphans' Court, for an inquest to make partition and valuation of the real estate.  The inquest decided that partition could not be made ; whereupon the Orphans' Court directed the administrators of John Fromberger, the elder, to make sale of the property.  The money for which this action is brought, is the proceeds of the sale made by the administrator, under the order of the Court.

When real estate, subject to partition or valuation, cannot be divided among the heirs, the Orphans' Court may order the administrators to sell it.  The second section makes it the duty of the Court to confirm the sale, and to decree the estate in the premises so sold, to be transferred and vested in the purchaser, as fully as the intestate held the same at his decease, subject to the payment of

(Fromberger *v.* Greiner.)

the purchase-money. The act further directs the Courts to cause the proceeds of sale, to be distributed according to law and justice. Act of 2d April, 1804.

On the sale of the premises, and the confirmation of the sale by the Court, the land passes into the hands of the purchaser, discharged from the lien of debts, subject only to the payment of the unpaid purchase-money, according to the terms prescribed in the order of sale. The money being substituted for the land, the legislature have made it the duty of the Court to distribute the proceeds according to law and justice. And as the administration bond extends only to the personal assets of the intestate, by a subsequent act, when real estate is sold, the law authorised the Court to require security from the administrators, conditioned for the faithful execution of the power committed to them in making the sale, and truly to account for and pay over the proceeds, in such manner as the Court may legally decree. Act of 26th March, 1808.

There would seem, therefore, no necessity to support this action, to prevent a failure of justice, as the case has been foreseen and provided for by giving to the appropriate tribunal plenary authority over the whole subject-matter, who are empowered to settle the distribution of the proceeds, on the principles which appertain to a Court of chancery. If the funds in the hands of the administrators be wanted by the plaintiff, for the purposes stated, he may apply to the Orphans' Court, who, by the express terms of the act, may distribute the money arising from the sale, or take such order in relation to it, as they may deem just and proper. When the personal estate of the plaintiff's intestate is insufficient to pay such debts as are a lien on the real estate, and of course on the fund, the Orphans' Court may order the whole, or so much as may be required, to be paid over to the administrator, exacting from him security for the faithful application of the money, and the return of the surplus to the heir. The same remedy is open to the latter, who is entitled to receive the fund raised by the sale of the real estate, unless the personal estate should prove insufficient. The course here indicated possesses this great advantage, that the Orphans' Court may cause all the parties to be brought before them, and can settle the rights of all, however complicated, in one decree, either by ordering the whole, or part of the money, to be paid to the administrator, on such terms and conditions as they may impose, or by a decree that it should be paid to him, in whole or in part, upon his giving (if the case requires it,) a refunding bond, conditioned for the payment of future or contingent liabilities. A claim to the money may be made by both the administrator and heir, and the accidental fact, that they are the same person, it is properly conceded, cannot alter the principle. This action will expose the administrator to two suits; and in one, or perhaps in both, we must settle the proportion to which each is entitled; for we cannot admit a right in the adminis-

trator to recover the whole fund, where only a small part, may be wanted for payment of debts. If this were allowed, the heir would have a just right to complain, for although lands are assets, they are subject to his control, only when there is a deficiency of personal estate. The real estate goes to the heir, subject to be divested in a mode pointed out in the acts of assembly. When sold and converted into money, the money must be payable to the same person who was the owner of the land, for which it is substituted. The heir is placed in no worse situation by the sale; nor are the creditors, who have the same lien on the money as the land. The security of both requires that the administrator should not obtain possession of the fund, without an order or decree of the Court; as in that case he would receive it without giving security for its faithful application. The course which has been here pursued is attended with great inconvenience, which may be readily avoided by resorting to the Orphans' Court, who may make such decree as the circumstances of the case may require, and may enforce a compliance with it by attachment or sequestration; or where there is a claim for money, they may (under a recent act,) order an execution in the nature of a writ of *fi. fa.* When lands have been sold on an execution, the surplus cannot be recovered at the suit of the administrator; at least, I know of no action of that kind. The usual course is to rule the sheriff to bring the money into Court, which does justice between the parties, by ordering the whole or part of the money to the administrator or heir, and in such proportions as may be just, requiring from each such security, (if the case demands it,) as will protect the rights of all who have an interest in the fund. We sometimes support suits, however inconvenient, to prevent a failure of justice; but the common law forms are but ill adapted to administer relief in specific cases; and in all such cases it is desirable to devolve the duty of administering what may be termed equitable relief on the only Court which has the powers necessary to do justice to all the parties, in one sentence or decree. But the parties have not only a remedy in that Court, but it is the only remedy; for the legislature have declared, that in all cases where a remedy is provided, a duty enjoined, or any thing directed to be done, by any act or acts of assembly, the directions of the act, shall be strictly pursued. The case of *Grider* v. *M'Clay*, (11 *Serg. & Rawle*, 224,) cited in the argument, decides that the surplus money arising from the sale of land, is to be considered simply as money; and so far as this principle goes, it is an authority to the plaintiff in error. But this does not touch the question of remedy; as in the view we have taken of it, whether it be land or money, it is within the jurisdiction of the Orphans' Court, who, having ordered the sale, have the exclusive power to regulate and distribute the proceeds, on such terms and conditions, and with such restrictions as the circumstances of each case may require. *Hege* v. *Hege*, (1 *Penn. Rep.* 90,) is the

(Fromberger *v.* Greiner.)

case of a private, and not a judicial sale, and does not interfere with the principles here asserted.

Judgment affirmed.