## Account of Stevenson's Assignees.

An assignee, under a voluntary deed for the benefit of creditors, is not justified in paying a preferred debt, without other evidence of its existence ; and if it be shown, upon the settlement of his account, that no such debt existed, the credit for its payment will be disallowed.

APPEAL by the assignees from the decree of the court of common pleas of *Alleghany* county confirming the report of auditors to whom was referred the account of William Bell, Jun., John Alexander and Thomas Stevenson, assignees of Samuel Stevenson.

The subject of dispute arose out of the decree of the court upon certain credits claimed by appellants for disbursements made under the fourth article of the deed of assignment of Samuel Stevenson to them in trust for the benefit of creditors.   It is as follows :

" 4. To pay all the creditors of the said Samuel Stevenson to whom James Gray may have become liable by acceptance, indorsement, assumption or otherwise, viz."

Then followed a list of those liabilities including *eight* drafts in favour of William Bell & Co., particularly described by their date, by whom drawn, by whom accepted, the payee and amounts.   The assignees paid the whole *eight* drafts amounting to 4411 dollars 48 cents, for which they claimed a credit.   The account was referred to auditors, before whom it was satisfactorily proved that two of the drafts mentioned in the assignment, amounting to 1006 dollars 88 cents, never existed, but were inserted in the deed of assignment by mistake ;. and that the assignees had paid them upon the faith of what appeared in the assignment, which they supposed was their only guide in settling the business entrusted to them.

The only question then was, whether, under these circumstances, the accountants should be allowed a credit for the amount actually paid, or for the amount which was actually due.   The auditor reported against the accountants, and the court below (Dallas, President) affirmed their report.

*Watts* and *Craft*, for appellants, cited, 3 *Watts* 199 ; 4 *Watts* 410.

*M'Candless* and *Shaler*, for appellees, cited, 9 *Serg. & Rawle* 223.

The opinion of the Court was delivered by

SERGEANT, J.—The assignment is the guide which the assignees are to follow in the fulfilment of their trust, and the directions of the

instrument in this instance are sufficiently clear and explicit. They are "to pay all the creditors of the said Samuel Stevenson to whom James Gray *may have become liable* by acceptance, indorsement, assumption or otherwise," viz. certain drafts specially designated, including the two in question. Were they justified in paying the amount of the two drafts without being produced, or any proof of their existence and loss, and though it turns out that no trace of the issue or existence of such drafts can be discovered, but on the contrary it would appear they never did exist and were inserted in the instrument by mistake? I think not, either on the language of the assignment or on general principles. They are to pay the creditors to whom James Gray had become liable by acceptance, &c., and therefore should have had evidence of such liability. The enumeration of the drafts in a *videlicet* would not overrule this direction and enable them to pay drafts which never existed, or at least do not appear to have existed, but would seem to have been erroneously inserted upon a supposition that they had been issued. Should an assignor even direct the payment of a debt which turned out to be fictitious, whether it was inserted by fraud or mistake, the creditors would have a right to contest it. The assignor cannot create a debt without foundation in fact and thus divert his property from his just creditors. But it is said the assignees paid over this money to Bell & Horner under the directions of the assignment without notice. The answer to this is, that they were not justified by the assignment in paying any of these drafts unless they were produced and delivered up to them by the holder, or at any rate it could be conclusively proved that they existed and were lost, and an indemnity given against another demand by the person into whose hands they might happen to fall. For I take it to be a well settled principle of commercial law, that no one who is liable on a bill of exchange or promissory note, not alleged to be lost, is bound to pay it unless the bill or note be produced and delivered up to him by the holder. After payment or satisfaction (says Mr Chitty) of a bill or note, the party making such payment should take care that the instrument be delivered up to him, or he may be liable to an action by a third person who has been a holder of a bill before it became due for the recovery of the amount. *Chitty on Bills* 305. The assignees therefore as payers of these drafts in lieu of Stevenson were not bound to pay them without production; and acting as trustees for another, they were authorized to do, in that capacity, only what the trust legally required them to do. For the security of the acceptor whom they were to protect, as well as of the drawer or others on the bill, it was their duty to require the production of the drafts and to keep them; for otherwise it was impossible to know to a certainty whether they existed, or whether they had been negotiated by the payee, and whether the payee was then a holder entitled to receive payment of them. We are of opinion, that the assignees were not authorized to pay these alleged drafts merely because they were enumerated by

VII.—2 Q*

[Account of Stevenson's Assignees.]

the assignor, without requiring their production or some proof of their existence or loss; and that, under the evidence, the payment set up was in their own wrong.

On the subject of compensation also we concur in opinion with the court below.

Decree affirmed.