## INGRAHAM *v.* COX.

Where an account has been regularly filed in the proper office, the Court will not compel the accountant to file a second, unless it is shown that the first is lost; but will presume that is in the proper office, until the contrary is shown.

*Quære,* whether even if the first has been lost without any default of the accountant.

None but a real creditor, or some one who has a direct interest in the estate, can compel an assignee to file an account, under the assignment laws of this state.

An administrator *de bonis non* is not such a creditor. The account of the first administrator must first be settled by his representatives in the Orphans' Court, and the indebtedness of the deceased administrator ascertained by the decree of that Court, before any such claim will be ascertained. The indebtedness of the administrator of an estate cannot be tried collaterally, but must be ascertained by the Court having jurisdiction of the estate, on an account filed by the legal representatives of the deceased administrator.

After *twenty years* the law presumes the payment of all debts, whether by bond, judgment, or decree; also, of legacies. After the expiration of that period, the law will presume that an assignee, executor, or administrator has settled an account and disposed of the assets for administration in his hands in the manner required by law. The burden of proof is cast upon those who deny the settlement, or presumption of it, and must rebut it by proof, otherwise this legal presumption will conclude them.

*Dec.* 9. THE facts, so far as it is requisite to state them for a clear understanding of the case, are these: Nalbro Frazier was the administrator of one John Harbach, and while he was thus acting, received by a credit considerable money deposited in the Bank of the United States on the 6th of February, 1796, money belonging to the estate of the deceased. Subsequently to the receipt of this money, viz., in 1804, he made a general assignment of all his property, for the benefit of his creditors, to John Leamy and Daniel W. Cox, who accepted the trust and acted in that capacity.

It was alleged and not denied, that in 1827 the assignees settled their account at the proper office.

Subsequently to this Leamy died, and it was alleged the account so settled could not be found. After this, Francis Ingraham became the administrator *de bonis non* of the estate of John Harbach, and in 1843 presented his petition in the Court of Common Pleas, praying that a citation might issue, commanding Mr. Cox, the surviving assignee, to settle another account, alleging that the first was lost, and also stating that he the said Ingraham was a creditor of said Frazier, because he had received the money above stated as the administrator of said Harbach, and had not accounted for the same.

To the petition thus presented, Mr. Cox filed an answer, on oath, denying most of the matters contained in the petition, and especially that *Harbach or his estate was a creditor of said Frazier when the assignment was made.* The facts set forth in the answer were not controverted, but the case was argued principally upon the petition and answer; by *Charles Ingersoll*, Esq., for the petitioner, and *F. W. Hubbell*, Esq., for the respondent.

On the 9th of December, 1843, the opinion of this Court was delivered by

PARSONS, J.—This is a petition presented to the Court of Common Pleas by Francis Ingraham, as the administrator of John Harbach, deceased, setting forth that in the year 1804, Nalbro Frazier made a voluntary assignment of all his real and personal estate to John Leamy, now deceased, and to Daniel W. Cox, in trust for his creditors; that the assignees accepted the trust, and that they received various sums of money. That in the year 1827, the assignees filed and settled their account in the office of the Prothonotary of the Court of Common Pleas, in which they reported a balance in their hands of between $2000 and $3000, and that since the filing of said account, the said assignees have received various sums of money. That since the filing of the same, the said account has disappeared from the files of the Prothonotary's office. That the petitioner has no copy of the account, but that he believes Mr. Cox, the surviving assignee, has materials out of which said account was framed, if he has not the said account. That the account was never acted upon or audited in any manner. And that the said Harbach was a creditor of said Frazier, and likewise the petitioner is a creditor of the said assignor, and entitled to the benefits of the trust created by said

assignment. He prays that a citation may issue to said Cox, commanding him to appear and file in the proper office a copy of the lost account, or a counterpart thereof, and also to file and settle his account, exhibiting a statement of the amount of the estate assigned, and the manner in which the same has been disposed of, &c.

On a citation being issued, Daniel W. Cox appears, and files his answer, by which he admits he was an assignee of Nalbro Frazier, that he filed his account, and avers that it was audited and a distribution made; also that Francis Ingraham, one of the creditors of said estate, claimed a larger sum than the auditors allowed him, and that on the 27th of January, 1827, he paid to said Ingraham the sum of $542.50, in full of his demand on said Frazier's estate, for which a full discharge was given. He states further in his answer, that but a small trifle of money has come to his hands since his settlement, and that he is himself the principal creditor of the estate. The assignee denies that John Harbach is or was a creditor of said estate, or that he has any right to call upon him, either to file an additional account, or to furnish a duplicate of the one already filed, if it was in his power to furnish such duplicate, and protests that the original is not lost, or that said Ingraham has any interest in said estate.

It is perhaps sufficient to say at first, that there has been no evidence produced before the Court that diligent search has been made in the proper office for the original account, and that it cannot be found, or that the respondent has been concerned in its being withdrawn from the files of the Prothonotary's office. Hence it is unnecessary to decide, whether we would compel an assignee or accountant to file a second account if the first was lost. We are to presume that this, like all other records, is in the proper depository till the contrary is clearly proved, which has not been done in this case.

We are next to inquire, whether we will compel Mr. Cox, on the application of this petitioner, to account for the money which has come into his hands since the settlement of the former account. If the petitioner is a real and acknowledged creditor of Nalbro Frazier, then he has a right to demand such settlement; but if he has not, this Court will not exert its power in compelling any such settlement on the application of a mere stranger.

This application is resisted on two grounds: first, it is contended that the claim exhibited by Mr. Ingraham is of such a nature, that he cannot demand a payment out of the effects that have been assigned; and secondly, that from the great lapse of time, the law

presumes that the claim which once might have existed has been paid.

The position assumed by the counsel for the petitioner is, that Frazier entered in his journal a credit for $490, money deposited in the Bank of the United States, and a further credit in the same book for $868. No date is fixed relating to the time these entries were made; but a book of the Bank of the United States has been shown, where Frazier has a credit on the same, upon the 6th of February, 1796, for $868.

It seems manifest, that whatever money Frazier received at that ancient period, was received by him as the administrator of John Harbach, deceased. The question then arises, can the administrator *de bonis non* appear and claim this money that Frazier received in his representative capacity, without first showing that Frazier has settled his account, or without having first called upon his representatives to settle an account of the manner in which he disposed of the assets that came into his hands as such administrator.

It has been stated in argument, that search was made in the proper office, and no account has been found showing that Frazier ever made a settlement before the Register, of the manner in which he disposed of the assets belonging to the estate of Harbach. It is likewise asserted that Frazier is now dead. Suppose such to be the state of facts, still the duty of the present applicant is plain; the remedy to be pursued is pointed out by the law clearly and certainly; and to my mind it is equally manifest that the course now adopted by Mr. Ingraham is erroneous, and one which ought not to be tolerated.

If any legal proposition is clear, it is this: that the present administrator of Harbach cannot charge Frazier's estate, which has been legally assigned, until he cites his legal representative to settle an administration account of the manner in which the decedent administered the estate which came into his charge, and the exact balance which remained in his hands unaccounted for, is ascertained. This, I think, can be shown to be abundantly clear, both from reason and authority.

It should be borne in mind, that the money which Frazier received was for distribution among the creditors of Harbach, if any there were; if not, of course it goes to his heirs, and when received by him it was to be distributed according to the intestate laws of the Commonwealth. Hence, in my opinion, his estate, which has been assigned, cannot now be charged with it. Nor does Frazier become

10        G

a debtor to the estate till he has been called upon, or those who represent him, to account for the effects received in a form prescribed by the law relating to the estates of decedents. Supposing that Frazier received the money as alleged by the petitioner, before he can be called a debtor, liable for direct payment, his account must be settled before the Register, passed under the scrutinizing observation of the Orphans' Court, and he by that tribunal declared a debtor. He has a right to settle an account of his trusteeship under oath. He can be compelled by creditors to answer, under that obligation, as to the manner in which he has disposed of the funds which came into his hands.

But if we suffer his successor to come in and charge him as a simple debtor to that estate, innumerable conflicting issues are raised between other creditors of Frazier and the administrator *de bonis non*, which the Court of Common Pleas have not the power to try or settle. Suppose we should compel a settlement by Mr. Cox of his account, and when so settled it is referred to an auditor, and Mr. Ingraham should appear before that auditor, attempting to assert his claim, now produced to charge him with the money thus received, and the creditors of Frazier should allege that he had paid this money on debts of different degrees due by the intestate, as for physicians' bills, servants' wages, debts due by bond, &c. (as the law stood in Pennsylvania in 1796). Could that auditor marshal the assets in his hands? Could he decide those various questions which are purely within the jurisdiction of the Orphans' Court? Surely not. Then how could the claim now demanded be asserted, if Mr. Cox is required to settle a further account? Where is the evidence of indebtedness, of which this Court can take cognisance?

This position rests not upon reasoning alone, but in my opinion is settled by judicial decisions of the Court of last resort in this state.

In the case of Dennison *v.* Cornwall, 17 S. & R. 374, it is decided, that a ward cannot, on coming of age, sustain an action of assumpsit against his guardian for work and labour done. Judge Smith, in delivering the opinion of that Court, remarks: "There may be cases in which the ward ought to be paid for services thus rendered—*but such cases properly belong to the decisions of the Orphans' Court when legally brought before them.* All we mean to say is, that the compensation cannot be ascertained in an action like the present, in the Court of Common Pleas."

The principle asserted by us seems to be fully settled in the case of Drenkle *v.* Sharman, 9 Watts, 485. In that case it appeared

Sharman obtained a judgment against John and David Garber, administrators of John Garber, deceased. John and David were dismissed from their administration. Daniel Drenkle was then appointed in their place. He died, and letters of administration were then granted to Matthias S. Richards, as the administrator of John Garber. The administrator of Drenkle settled the account of his testator as the administrator of John Garber, by which there appeared to be a balance due the estate of Garber of $1518. Sharman was dead, and his administrator brought an action of assumpsit against the administrator of Daniel Drenkle, for the amount of the judgment before obtained against the estate of Garber, and it was held the action would not lie; that the remedy was against Richards, who was bound to recover the fund from Drenkle's administrator.

The case of Weld v. M'Clure, 9 Watts, 495, decides, that an administrator de bonis non with the will annexed, may maintain an action against a dismissed executor, to recover from him the balance of the estate remaining in his hands; and the position now assumed is fully sustained in the case of Irwin v. Irwin, 1 S. & R. 554.

It is ruled in the account of Stevenson's Assignee, 7 Watts, 480, that an assignee is not justified in paying a demand made by a creditor without evidence of its existence, even if preferred in the assignment. And in the case of Ruch v. Good, 14 S. & R. 226, it seems to be settled that an assignee cannot be sued till he is first called upon for settlement, and his account is settled and the fund prepared for distribution.

What evidence is there then before us, that Frazier is really a debtor to Harbach's estate, till that question is settled by the proper tribunal, or until he has been required to account in a legitimate manner? What is there presented in this case that would authorize Mr. Cox to pay the claim now demanded by the administrator of Harbach? It surely cannot be fairly contended that he could settle the account of Frazier as the first administrator of said estate. It is admitted that he received the money in a representative capacity —that he was merely a trustee. But counsel say that they waive the trust character in which he acted. Be it so; yet the remedy to enforce payment must be pursued before the proper tribunal. He has the right to account as other trustees do, who are thus intrusted with funds, and cannot be compelled to answer in a different way. Hence, on this ground, I think Mr. Ingraham cannot now require this assignee to account.

The second objection made by the respondent is the lapse of time,

and he claims the benefit of the legal presumptions which arise from it.

As a general rule, after the expiration of twenty years, the law presumes debts of the highest character paid, bonds, judgments, decrees, &c. This is admitted by the counsel for the petitioner. But he contends that the money was received by Frazier as an administrator; therefore he was a trustee; hence he does not come within this rule of law.

I think, however, the principle is conclusively settled against him. The case of Sechrist v. Sechrist, 1 Penn. R. 419, rules this. That was an action on an administration bond. It appeared that a bond was given by the administrator in May, 1797; an inventory was filed on the 15th of August, 1797, an administration account was settled in 1803, and a supplementary account filed on the 20th of August, 1805, showing a balance in the hands of the administrator amounting to £585. The suit was brought by one of the heirs in 1826, and it was held he could not recover.

The Supreme Court there say, that a presumption of satisfaction from lapse of time, arises in the case of every species of security for the payment of money, whether bond, mortgage, judgment, or recognisance, and the computation runs from the period when the money was demandable.

In the case of Foulk v. Brown, 1 Penn. R. 419, the same doctrine is laid down with still greater force. It was an action for a legacy. And Mr. Justice Sergeant says: "Legacies not being within the statute of limitations, fall within the rule of presumption. After the lapse of twenty years, bonds and other specialties, merchants' accounts, legacies, mortgages, judgments, and indeed all evidences of debt excepted out of the statute, are presumed to be paid. It is likewise ruled in that case, that within twenty years the onus of proving payment lies on the defendant: after that time it devolves on the plaintiff to show to the contrary by such facts and circumstances as will satisfy the minds of the jury that there were other reasons for the delay of the prosecution of the claim than the alleged payment. This principle is equally sustained in Fonblanque's Equity, 329; Gilb. Equity, 224; Eldridge v. Knatt, Cowp. 211; Bickley v. Richards, 13 S. & R. 402; Crist v. Brindle, 2 Penn. Reps. 262.

In this case the money was received in 1796, forty-seven years ago. Ought not this Court to presume that Frazier settled his account, and paid the money as required by law? especially when no

one fact has been shown to be left to a jury (if the case was on trial before them), to account for the delay, or that there is reason to believe the money has not been properly accounted for. In my opinion, the Court is bound to presume it; for no one fact appears to rebut this legal presumption.

There must be a period when litigation in each case shall·cease; when controversy shall end. There is a termination in most cases, fixed by judicial decisions.

If a bond or judgment is presumed to be paid after twenty years, if an administration bond cannot be sued after that time, and if after twenty years a legacy is presumed to be paid, why should we not presume that an administrator has settled his account, marshalled the assets, and paid them over as he is required by law to do? I have no hesitation in saying that such is the legal presumption; and until the contrary is shown, the law presumes that Frazier did settle his account, and that he paid the money as a faithful administrator. Nothing has been shown in this case to weaken this strong legal presumption. Therefore on both grounds assumed in the answer, I think the law demands that his application for a citation should be dismissed; and the Court order that Mr. Cox be discharged from a further answer.