IN THE

# SUPREME COURT OF JUDICATURE

OF THE

## STATE OF NEW JERSEY.

### JUNE TERM, 1877.

McDONALD & GLYNN v. O'CONNELL'S ADMINISTRATORS.

1. Upon the removal by the Orphans' Court of an executor or administrator who has wasted the estate, the right of redress for such *devastavit* passes to his successor in office, and cannot be exercised by creditors.

2. If a creditor has commenced a suit against such original administrator, founded on a *devastavit*, upon the removal of such administrator the action cannot be continued against such administrator.

*Query*—May such action not be continued against the substituted administrator?

On demurrer to replication.

Argued at February Term, 1877, before BEASLEY, CHIEF JUSTICE, and Justices KNAPP, DIXON and REED.

For the plaintiffs, *E. L. Price.*

For the defendants, *McCarter & Keen.*

VOL. X.                           Y

The opinion of the court was delivered by

BEASLEY, CHIEF JUSTICE.   The first question mooted on the argument relates to the sufficiency of a replication to a special plea put in, by leave of the court, *puis darrein continuance.*

The declaration was in *assumpsit*, laying a claim on a promissory note made by the intestate against the defendants as his administrators.   The plea drawn · in question sets up that, since the last continuance, "the Orphans' Court of the county of Essex did," in the language of the pleader, "for sufficient reason appearing unto them therefor, make an order that the said defendant, Abraham M. Reynolds, be removed from his office of administrator of the said James O'Connell, deceased, and that his letters of administration be revoked; and that afterwards the said Orphans' Court of the county of Essex, did order and direct that the said defendant, Sarah F. O'Connell, be removed from her office as administratrix of the said James O'Connell, deceased, and that her letters of administration thereof be revoked, and that Albert P. Condit, Esq., of the county of Essex aforesaid, be appointed administrator in the place and stead of these defendants," &c. There is also an averment that such substituted administrator duly gave bond and took upon himself the administration of the estate.

The reply to this plea was, that before the removal of the defendants, and whilst they continued in office, they wasted, embezzled and misapplied the moneys, assets and· effects of the estate of their intestate.   This replication is confronted by a demurrer.

Thus the point of inquiry is, whether a suit will lie, or can be continued by a creditor of an intestate against an original administrator who has wasted the estate, after his removal by the Orphans' Court, and after the appointment of his successor.

There appears to be some doubt whether this interrogatory should receive a negative or an affirmative response, if we are to adopt the English law books as our standards of judgment,

for while in them the *dicta* are variant, there does not appear to have been a single decision directly upon the point. In *Packman's Case*, 6 *Rep.* 18, and in *Palmer* v. *Litherland, Latch* 160, there are expressions of opinion to the effect that if an administrator wastes the goods and afterwards administration is committed to another, yet any debtee shall charge him in debt; but in neither of these cases did the facts require a judicial consideration of the question. In *Chandler* v. *Thompson, Hob.* 265, the matter is referred to as being entirely uncertain whether the suit for the goods wasted should be brought by the successor in office or by a creditor of the intestate. Judge Buller, if he was the author of the treatise on practice commonly attributed to him, leaves the subject in the same obscurity, though he seemingly regarded the determination that the creditor had the right of action as the more reasonable. But to the contrary of this intimation stands the authority of Chief Justice Vaughan, who, in *Brooking* v. *Jennings et al.*, 1 *Mod.* 174, explicitly says : "If the former executor wasted, the new one hath his remedy against him ; but he is not liable to other men's suits." The reporter adds that Justice Atkyns "accorded."

But whatever may be the true solution of this problem in the light of the ancient adjudications or opinions, such solution would give but a slight assistance in the ascertainment of the question now under consideration. All questions relative to the remedies of creditors against executors or administrators must necessarily be the creatures of the statutory law, for no remedy of that kind existed antecedently to such enactments ; and the consequence is, that with respect to such remedies we must look almost exclusively to the statutes which create, modify or adjust them. Pursuing this course at this time, and turning to the past and present legislation on the subject being discussed, it seems to me that there is no difficulty whatever in arriving, in the present inquiry, at a satisfactory result. By Section 8 of the act passed the 16th December, 1784, (*Pat. L.* 59), power is conferred upon the Orphans' Court to remove, on cause being shown, misbehav-

ing administrators, and the section further directs, in these words, "that in every such case, the said court shall forthwith, by sentence, revoke or repeal the letters of administration, and thereupon the Ordinary, or his surrogate, shall grant letters of administration to such person or persons, having right thereunto, as will give bonds in manner and form aforesaid, who may have actions of trover, detinue or on the case, for such goods or chattels as came to the possession of the former administrators, and shall be detained, wasted, embezzled, withheld or misapplied by any of them, and no satisfaction made for the same."

It will be at once observed that this provision gives to the substitute of the primary administrator rights far greater than belong by law to an administrator *de bonis non*, or to an officer succeeding to a temporary administration. With regard to these latter classes of officers, it has been many times decided that they cannot call on the representative of their predecessor for the proceeds of property converted into money, but only for assets existing in specie. This doctrine was held in *Brownlee* v. *Lockwood*, 5 *C. E. Green* 239, and was repeated in *Carrick's Adm'rs* v. *Carrick's Executors*, 8 *C. E. Green* 364. Whereas, by force of the clause just recited, the first administrator is liable to his successor for everything belonging to the estate, whether the same remains in his hands or has been squandered or misapplied by him.

This policy of placing the remedy for assets withheld or wasted in the succeeding administrator, in exclusion of all other persons interested in them, has been carried through various statutes—the substance of which is now embodied in Sections 130 and 131 of the Orphans' Court act, as contained in the late Revision, page 781. The former of these sections enacts that upon removal the administrator shall deliver over immediately to his successor all the moneys and assets of the estate; that he shall, at the next term of the Orphans' Court, settle his account, and within sixty days thereafter pay over the balance found to be due, "and on failure thereof," in the

language of the act, " the court may enforce the performance of such order by a fine not exceeding the amount of the estate in the hands of such executor, administrator, guardian or trustee aforesaid, so removed, to be collected by execution against the goods and chattels and lands of such defaulter, in favor of the person to whom the defaulter should have made such payment or delivery as aforesaid, or the payment of such fine or performance of such order may be enforced by attachment for contempt; and such fine, when collected, shall be paid to the representative of the estate, who shall account for the same, when received, as assets of the estate."

The following section declares that the removal of the administrator shall not release him or his surety from liability for the estate which has been received by him, or " for any neglect, default, miscarriage or breach of trust in the execution " of his office; and it then declares that the succeeding administrator " may have actions of trover, detinue or in case for such goods and chattels," and for " any breach of trust, waste, embezzlement or misapplication of the same, and may proceed at law or equity for the recovery of the assets of the estate," &c.

In the presence of this language it is difficult to see how any doubt can arise as to the intention of the law-makers. The entire remedy for all breach of duty, as well as for the recovery of the assets of the estate, is here manifestly deposited in the new personal representative, and unless we are to suppose that it was the design to make the defaulting administrator liable to render a double compensation for the same waste or misfeasance, we are constrained to the conclusion that this right to enforce redress, which is created by this section, is rejective of every other. It never has been suggested, in those cases in which it was claimed that after the removal of a defaulting administrator a creditor could sustain a suit against him, resting on a *devastavit*, that an action for the same malfeasance would lie at the same time in behalf of the substituted administrator. A double recovery on the same ground is inconsistent with justice and legal

principles, and, therefore, the purpose of legalizing such an anomaly could be imputed to the legislature only when the statutory language would admit of no other interpretation. But in the present instance there is nothing whatever to give color to such a notion. The expressions used are clear and appropriate, and they unmistakably display the design to oblige the outgoing administrator to respond for all things touching the estate, exclusively to the one person who alone represents all those who are interested in such estate. The statute commands the primary administrator to settle his accounts and turn over the balance. This implies that in such accounting he is to be made chargeable for all the money and assets wasted by him; as he could not claim allowance for such defalcations, they are to be included; consequently, unless we accept the idea that a two-fold recompense is to be made for such official misapplications of the assets, and the claim of a responsibility to creditors for the same misconduct, the right of such creditors to sue, must of necessity be rejected. In the present case, the statute in question requires, under the pain of being in contempt of the court, the payment of the sum found due on settlement from this discharged administrator to his official successor; and yet if this suit now pending can be continued, the plaintiff, as creditor of the estate, will recover, by judgment *de bonis propriis*, of the administrator, to the extent of the waste committed by him, a part of these same moneys included in such settlement of accounts. Such a result has never obtained in any case; it is obviously unjust and unreasonably punitive, and is not warranted by this law, either from its expressions or implications.

Nor would it in the least degree harmonize with the scheme of the laws of this state, with respect to the settlement of the estate of decedents, to permit a creditor to recover against a removed administrator for assets wasted, and exclude the substituted administrator from the right to sue for the same misconduct. In the first place, such exclusion would be in contravention of the explicit language of the clauses just recited, which confer such right; and, in the second place, it would

give to one creditor an undue proportion of the assets. Except in the few instances enumerated in the act, it is the policy of our laws to distribute the property of deceased persons ratably among all the creditors. This is everywhere apparent, and is the general legislative design ; and it is a plan so just in itself, that it possesses a strong claim to every practicable construction in its favor. Here, as in most other cases, equality is equity ; and that equality in this case can be achieved only by denying to this plaintiff the right to appropriate to himself such moneys as may have been wasted by this administrator, and by so construing the law that such moneys shall go into the hands of the new administrator, who will hold them as a common fund for the benefit of all the creditors.

From these considerations I am led to the conclusion, that after the removal of an administrator for misconduct, the right of suit, founded on a *devastavit* by such discharged official, passes, by force of the statutes of this state, as an exclusive privilege to the substituted administrator. A creditor of the intestate cannot maintain a suit against such original administrator

Nor will such suit, commenced before his discharge, be continued after such event.

This interpretation of the laws of this state is in accord with all the decisions of the courts of other states that have been brought to my attention, and which are founded on statutes substantially similar to our own. *Jewett* v. *Jewett's Adm'x*, 5 *Mass.* 275 ; *Drenkle* v. *Sharman*, 9 *Watts* 485 ; *Carter* v. *Trueman*, 7 *Penn. St.* 315.

The replication cannot be sustained.

The principles thus decided necessarily lead to the rejection of the second replication to this same plea, the gist of such replication being that the original administrator has not turned over the money and assets of the estate to the new administrator, as the statute requires. Granting this to be so, a creditor cannot by suit right such a wrong. The remedy is in the hands of the new administrator, and it is clearly his

duty to apply such remedy, and for his refusal or neglect to perform such duty he will undoubtedly be answerable to the plaintiff and the other parties interested.

This replication must partake of the fate of the previous one.

In order to avoid all misconception as to the extent of the rule enounced in this case, it is proper to say that the question whether or not the present suit, which has been brought against the original administrator, may not be continued under an equitable construction of the act to prevent the abatement of suits against the substituted administrator, does not arise in the present case, and that all that is here decided is, that the present suit cannot be continued against the original administrator after his removal.