The opinion of the Court was delivered by
Gibson J.
This was an action by the defendant in error, the plaintiff below, against Smith, as the indorser of a promissory note drawn by a certain Joseph S. Newell. At the trial, the plaintiff below produced a certain John Wilson, as a witness, who at the time was a stockholder in the Bank, and interested, but who, on an objection to his competency, executed a regular transfer of his stock to his daughter then residing in Philadelphia. The daughter had no agent in the town of Washington, but the transfer was delivered to the cashier for her use, though without her knowledge ; and on this the witness ivas admitted. The objection, that he was *320 a plaintiff and liable for costs is unfounded. His name did not appear on the record, and if the verdict had been in favour of the defendant, the Bank, in its corporate funds alone, would have been liable. It cannot be said the stock-holders were individually in Court under their corporate name, and so parties to the suit. A corporation is an artificial person, the creature of positive law, having an existence distinct from that of the natural persons that compose it; and, as to responsibility, and the right of property, possessing the character and attributes of an individual. This ens rationis, as it is sometimes called, may, for some purposes, however, partake of the character and qualities of the individual corporators : as, a corporation aggregate composed of citizens of a particular state, may sue a citizen of another state in the federal court, although such a corporation cannot, in its abstract character, be a citizen of any state. Hope Insurance Company v. Boardman, 5 Cranch, 57. Bank of the United States v. Devereaux, 5 Cranch, 61. In those cases, the construction was liberal, because the members of a body politic, suing in their corporate name, are as much within the reason of the act of congress, as if they had sued as individuals; and, for the purpose of being protected against the supposed possibility of partiality in the state courts towards their own citizens, they were considered as individuals. But as to responsibility there is a very different rule. A corporation can be in Court only as an artificial invisible body, appearing by attorney, and not in the persons of its members. As it may possess property separately from those who compose it, so its responsibility is limited to its own funds, and cannot be carried further. To render the members liable beyond the joint funds would deprive them of the most valuable privilege of a charter. Neither is the objection, that the interest never vested in the daughter, or that the grant was revocable, better founded. The transfer was made according to the mode established under the act of incorporation, and was good without an express assent of the daughter. There was a good consideration; and, as the subject matter was incapable of passing by accual delivery, the daughter’s assent, the grant being beneficial to her, will be presumed. The witness then was clear of all interest at the time he was sworn, and the presumption, if any there were, that the grant *321 was made under an expectation of a re-conveyance, went only to his credibility.
The facts on which the remaining exception depends are, that the note which the defendant indorsed to the plaintiff was protested at Washington for non-payment, on the 13th May, and on the morning of that, or the next day, a regular notice of the protest and non-payment, was sent by the mail in a letter addressed to the defendant at Burgettstown, near which he lived. According to the course of the mail, which left Washington but once a week, the notice could not have reached the defendant before the 19th, and the present suit was commenced on the 16th of the same month. The Court instructed the jury, that the object of the notice being to enable the indorser to arrange his relations with the drawer, it was necessary, that notice should be given only in a reasonable time, and that it was not an essential ground of the plaintiff’s action : in so far, that if it were received from the post office, by the usual and regular operations of the mail, at a period subsequent to the issuing of the writ, the suit might, nevertheless, be sustained. In support of this, it has been argued, that the only use of notice being, to warn the indorser that it is necessary for him to look to the drawer, and secure himself if he can, it is a measure requisite only to prevent the previous responsibility of the indorser from being discharged ; but that it was not an ingredient in the right of action, which arose immediately on failure to pay by the drawer. But I think it clear, that whether notice be necessary only to enable the indorser to look to his concerns with the drawer, or whether it be to apprise him, that he has encountered an immediate instead of a secondary responsibility, it is nevertheless a substantive part of the plaintiff’s title to bring the action. This was expressly decided in Rushton v. Aspinall, Doug. 679, on great consideration, and as Lord Manseield tells us, against the wishes of the Court j by whom it was held, in a case exactly like the present, that the want of an allegation of notice of non-payment was fatal, even after verdict; and this on the ground, that the title of the plaintiff was not merely set out defectively, but that he had set out no title. Now as the plaintiff’s title must be complete before suit is brought, it follows, the indorser must have notice before the impretration of the writ; or, at least, that some fact be averred and proved, that will excuse the *322 giving of notice altogether ; such, for instance, as, that the indorser had accepted of a general assignment of the drawer’s effects and estate. But the question is, what shall be considered notice. It is not necessary, that actual notice be given in every case ; but it will be sufficient, and considered constructive notice, if it be left at the house of the indorser or sent by the mail, even though the letter should miscarry. To affect a party with constructive notice is always a harsh measure, and sometimes attended with absolute injustice; though general convenience requires, that in particular cases it should be resorted to. Still, however, neither policy nor convenience requires, that the party should be affected, unless there was at least a possibility of his having had actual notice. From certain facts the law raises a conclusive presumption of actual notice ; but it is not so absurd as to raise it from facts which negative all possibility that the presumption accords with the truth of the case. The putting a letter into the post office shall be considered as notice, whether it be received or not, provided it might have reached the person to be affected in the regular course of the mail, but it shall be so only from the time at which it ought to have been received. Here there is no question about the reasonableness of the notice: the material point is the time when it shall be considered as having been received; for before that time the plaintiff had no right to commence an action. It may be said, that if the plaintiff wait until the actual receipt of notice, the indorser may abscond before a writ can be served on him, but the same reason might be urged in every other case where a plaintiff sues before his cause of action is complete. The notice being for the benefit of the indorser cannot be dispensed with ; and it would be extremely absurd to suppose, that any benefit could flow from it before there was a possibility of its having been received. The judgment must therefore be reversed, and a venire facias de novo awarded.
Judgment reversed, and a venire facias de novo awarded.