[PHILADELPHIA, APRIL 16, 1835.]

EARNEST and others, Administrators of EARNEST, *against* EARNEST and others.

IN ERROR.

In an action by the grandchildren of an intestate against the administrator to recover a distributive share of the estate accruing to them in right of their parent, the defendant may set off a debt due by the parent of the plaintiffs to the intestate.

Therefore, where a promissory note has been given by the child to the parent, it is immaterial whether it is evidence of a debt, or is to be taken as an advancement, so far as respects its admissibility in evidence, in a suit brought by the grandchildren against the administrators of their grand-parent, for a distributive share of the estate.

The question of advancement, may be settled in the Orphans' Court, but it must not necessarily be settled there.

Of advancements, under the laws of Pennsylvania, and the proper mode of ascertaining their amount and enforcing their operation.

WRIT of error to the Court of Common Pleas of Montgomery county in an action brought by the defendants in error, who were the minor children of *Henry Earnest* deceased, who was a son of *Baltzer Earnest*, deceased, by their guardian *John Huston*, against the plaintiffs in error, who were the administrators of *Baltzer Earnest*, to recover a distributive share of their grand-father's estate.

The declaration set forth that *Baltzer Earnest* died intestate on the 20th September, 1829, leaving five children and three grandchildren, to wit, *Eli, Mary and Elizabeth,* the plaintiffs, who were the children of *Henry,* one of the sons of the said *Baltzer Earnest,* which *Henry* was at that time deceased; that letters of administration on the estate of the said *Baltzer Earnest,* were granted to the defendants, who, by virtue of the same, possessed themselves of the *real* and personal estate of the deceased: that on the 15th of October, 1830, the said administrators settled an account of their administration of the said estate, in the Register's Office of the said county, by which it appeared that there was at that time in the hands of the said administrators the sum of six thousand one hundred and forty-three dollars and thirty-four cents beyond all debts, funeral and other expenses. By reason whereof, the said administrators became

(Earnest and others, Adm. *v.* Earnest and others.)

liable to pay to the said *Eli, Mary* and *Elizabeth,* children of the said *Henry* who was one of the children and heirs at law of the said *Baltzer,* the sum of ten hundred and twenty-three dollars and eighty-nine cents, being one sixth part of the said six thousand one hundred and forty-three dollars and thirty-four cents, and being so liable, &c.

Second count, for money had and received.

The defendants pleaded *non-assumpserunt* and payment.

The defendants' counsel gave the following notice of special matter, viz:

" Take notice that the above named defendants on the trial of this cause will give in evidence: That the above named *Baltzer Earnest* deceased, in his lifetime, lent and advanced to, or paid, laid out and expended for the above named *Henry Earnest* deceased, his son, and at his request, sundry sums of money amounting to seven hundred and thirteen dollars and sixty-three cents and upwards,to wit, two hundred and fifty dollars on the 1st of April, 1823, one hundred and thirty dollars more on the 10th of May, 1823, two hundred and fourteen dollars and      cents more on the      day of 1823; six dollars and forty-two cents more on the 12th of March, 1824; thirteen dollars and ninety-three cents more on the 24th of December, 1824; twenty dollars more on the      day of 1828; seventy-nine dollars and twenty-eight cents more on the 9th of March, 1829, and sundry other sums at sundry other times. That the said sums of money so as aforesaid lent and advanced to, or paid, laid out and expended for the said *Henry Earnest,* by the said *Baltzer Earnest,* were at the decease of the said *Baltzer* to be accounted for by the said *Henry,* and charged to and deducted from the part or share of the estate of the said *Baltzer Earnest,* to which the said *Henry* or his legal representatives or heirs, might be entitled at the death of his said father *Baltzer Earnest.*

" That the said sums of money were not paid nor accounted for by the said *Henry Earnest* at the death of his said father, nor at the commencement of this suit.

" That the said administrators laid out and expended for and on account of the said minor children's estate the sum of ten dollars, and that the said defendants will set off the said ten dollars and so much of the aforesaid sum of seven hundred and thirteen dollars and sixty-three cents and upwards, so advanced and paid to and for the said *Henry* as aforesaid, and the interest which accrued thereon to the decease of the said *Baltzer Earnest,* against the demand of the said plaintiffs as will be sufficient to satisfy such demand."

On the trial of the cause in the court below, it was admitted that the plaintiffs were the minor children of *Henry Earnest* deceased, and that he was a son of *Baltzer Earnest* deceased. That *Henry Earnest* died in August, 1828, leaving issue the above named minor children, and that *Henry Huston* was duly appointed their guardian

on the 23d November, 1829. That the said *Baltzer Earnest,* their grandfather, died intestate on the 8th of September, 1829, leaving a widow, who is still living, and issue five children, and the above named grand-children, the issue of his said son *Henry Earnest* deceased.

The plaintiffs gave in evidence a settlement of the personal estate of the said *Baltzer Earnest* deceased, made by the said administrators in the Register's Office on the 15th of October, 1830, and duly confirmed by the Orphans' Court on the 17th November, 1830, by which there appeared to be a balance of six thousand one hundred and forty-three dollars and thirty-four cents due the estate of the said *Baltzer Earnest* in the hands of the said administrators, making each distributive share (after deducting the widow's share or third) six hundred and eighty-two dollars and fifty-nine cents.

The defendants' counsel then read the notice of special matter and afterwards examined as a witness *Catherine Earnest,* who testified as follows, viz: " The said *Henry Earnest* the son, came to his father *Baltzer Earnest,* in the spring of 1823, and requested his father to let him have two hundred and fourteen dollars to pay a debt Mr. *Wentz* had against him, saying he was willing and intending it should come against his share of his father's estate after his father's death. His father agreed to advance the money to *Henry.* Afterwards *Henry* came to his father again and asked him to advance him two hundred and fifty dollars more to pay another debt. His father advanced this sum to *Henry* and took his note for the same, dated the first of April, 1823. *Henry* afterwards came again and asked his father to advance him one hundred and thirty dollars more. to pay another debt, which the father advanced to *Henry* and took his note for this sum, dated the 10th of May, 1823. *Baltzer Earnest* told his son *Henry* when he paid him the two hundred and fourteen dollars, he never expected to receive it in his lifetime, and that it was to go against *Henry's* share of the estate. He told *Henry* he must not expect to spend the other children's money: that these advancements must be against his share of the father's estate, at his death. I remember it was in the spring of 1823, when *Henry* wanted the two hundred and fourteen dollars to pay Mr. *Wentz.* I recollect *Henry* failed at that time and sold out, and was not able to pay his debts. He was there twice about the two hundred and fourteen dollars. *Henry* called on his father to pay a debt of *Jacob Redifer;* two bills of about twenty dollars, one in March 1824, and one in December, 1824. His father said he could pay these bills, but it must go against *Henry's* share of his estate, and *Henry* was so agreed and his father paid them. In 1827, *Henry Earnest* and *Jesse Earnest* came to their father's two different times, and *Henry* requested his father to pay *Jesse Earnest* seventy-nine dollars and twenty-eight cents, the amount of a note he had against *Henry.* The first time the father said he did not know whether he would do

216          **SUPREME COURT**          *[Philadelphia,*

it or not; he had advanced so much to *Henry,* he thought *Henry* would spend all his share before his father's death. The second time they called the father said he would answer the note but it should come against *Henry's* share of the father's estate after his death. *Henry* was agreed to it that it should, and it was paid by *Baltzer Earnest* the father, in the spring of 1829, after *Henry's* death. The second time they called was in May or June, 1827. The note was not assigned to *Baltzer Earnest. Henry Earnest* and Dr. *Jones* came to *Henry's* father, and *Henry* requested his father to pay a debt of twenty dollars to Dr. *Jones.* His father told *Henry* he would pay it, but it should come against his share of the father's estate. *Henry* agred to it, and his father afterwards paid this to Dr. *Jones* in May, 1828. *Henry* was upwards of thirty years old at the time of his death."

*Jacob Redifer* a witness on the part of the defendants, testified as follows: " *Baltzer Earnest* paid me two bills I had against his son *Henry Earnest.* He paid me one bill of six dollars and forty-two cents, the 12th of March, 1824; and the other of thirteen dollars and ninety-three cents, he paid me the 24th of December, 1824."

The defendant's counsel then offered in evidence, a promissory note from the said *Henry Earnest,* to the said *Baltzer Earnest* for two hundred and fifty dollars, dated the 1st of April, 1823, (the same above mentioned in *Catherine Earnest's* testimony,) of which the following is a copy.

" I promise to pay, or cause to be paid unto *Baltzer Earnest,* senior, or order, the just and full sum of two hundred and fifty dollars, in six months after this date, with interest at three per cent., until paid, it being for value received, as witness my hand this 1st day of April 1823.

$250.                              *Henry Earnest,* [L. s.]"
" Witness present,
    *William Earnest.*"

And also, a certain other promissory note from said *Henry Earnest* to *Baltzer Earnest,* for one hundred and thirty dollars, dated May 10th, 1823. (The same above mentioned by *Catherine Earnest,*) of which the following is a copy.

" May 10th, 1823. Twelve months after date I promise to pay to *Baltzer Earnest,* senior, or order, the just sum of one hundred and thirty dollars with interest at five per cent., without defalcation for value received, witness my hand and seal the day and date above mentioned.

$130.                              *Henry Earnest,* [L. s.]"
" Witness present,
    *William Earnest.*"

The defendants' counsel then offered to prove by *Catherine Earnest,* that the said *Henry Earnest,* the son, called on his father *Baltzer*

(Earnest and others, Adm. *v.* Earnest and others.)

*Earnest,* the 1st of April, 1823, and asked his father to advance him two hundred and fifty dollars to pay a debt. The father told *Henry* he would advance him the money, but that it must come against his share of the father's estate at his death: that *Henry* should not spend his share twice, and should not spend the other children's money: *Henry* said he expected that, and was agreed to it, and was willing it should come against his share at his father's death. *Baltzer Earnest* then advanced *Henry* two hundred and fifty dollars, and *Henry* gave his father the above mentioned promissory note for two hundred and fifty dollars: that *Henry Earnest* called on his father again the 10th of May, 1823, and requested his father to advance one hundred and thirty dollars more to pay another debt. The father told *Henry* he would advance this sum also, but it must also come against his share of the father's estate, and that he should not spend his share twice, nor spend the other children's money. *Henry* answered he expected and was agreed to it. His father then advanced *Henry* one hundred and thirty dollars more, and *Henry* then gave his father the above mentioned note for one hundred and thirty dollars, dated May 10th, 1823: That immediately after advancing said respective sums of two hundred and fifty dollars, and one hundred and thirty dollars, and taking the said notes therefor, and at other times afterwards, when *Henry* would want his father to advance him more money, his father told his son *Henry* that the above mentioned sums of two hundred and fifty dollars, and one hundred and thirty dollars were towards *Henry's* share of his father's estate, and to come against his share at his father's death: That these sums were not to be received from *Henry* in the father's lifetime, but to come against *Henry's* share at his death. *Henry* always replied he expected that, and was agreed that these sums should come against his share at his father's death.

The plaintiffs' counsel objected to the admission of the said notes, and testimony of *Catherine Earnest,* in evidence, contending that they were no evidence of advancements by the said *Baltzer Earnest,* to his son *Henry.*

The court was of opinion that the said notes and testimony of *Catherine Earnest,* should not be admitted in evidence, and that the said sums of two hundred and fifty dollars, and one hundred and thirty dollars were not advancements to the said *Henry Earnest,* and accordingly rejected the evidence. Upon which the defendants' counsel tendered a bill of exceptions, which was sealed by the court.

The jury found a verdict for the plaintiffs for four hundred and seventy-nine dollars, and two cents.

The errors assigned in this court, were—

1st. The court below erred in refusing to permit the defendants to give in evidence the note from *Henry Earnest* to *Baltzer Earnest* for two hundred and fifty dollars, dated 1st of April, 1823, and in

overruling the testimony proposed to be given by *Catherine Earnest* in relation to the same, as set forth in the bill of exceptions.

2d. The court below erred in refusing to permit the defendants to give in evidence the note from *Henry Earnest,* to *Baltzer Earnest,* for one hundred and thirty dollars, dated the 10th of May, 1823, and in overruling the testimony proposed to be given by *Catherine Earnest,* in relation to the same, as set forth in the bill of exceptions.

The cause was argued in this court by *Sterigere* for the plaintiffs in error, and by

*J. Sergeant* for the defendants in error.

*Rawle,* junior, for the plaintiffs in error, who was to have replied, was relieved by the court, whose opinion was delivered by

ROGERS, J.—The evidence which forms the ground-work of the defendant's exceptions may be classed under two heads :—

1st. The rejection of the promissory notes given by *Henry Earnest* to *Baltzer Earnest,* and

2d. The refusal to admit the notes with the explanatory evidence of *Catharine Earnest.*

As to the first point, it seems to have been conceded on the argument in the court below, that a debt due by a son to a father, cannot be set off in a suit brought by the grand-children for a distributive share of the estate of the grandfather. Now, it appears to us, that whether the notes were evidence of a debt, or are to be taken as an advancement, is immaterial, so far as their admissibility in evidence is concerned. It is clear, that if *Henry Earnest,* the father of the plaintiffs, had been alive and had brought suit for a distributive share of the estate, the administrators could have availed themselves of the defence, and it is not perceived in what respects the plaintiffs are in a better situation. They claim not as next of kin, but by right of representation; for by the third section of the act of the 19th of April, 1794, such issue are allowed to inherit *such share only,* as would have descended to the parent, if such parent had been living. And the 9th section, which relates to advancement, contains this exception; that when the issue to take shall not be of equal degree to the person dying, seized or possessed, the several descendants taking by way of representation, shall inherit such share only, as would have descended or been distributed, to his, her, or their parent or ancestor, if such parent or ancestor had been then living.

There has been no direct decision on the effect of the above section in this state, but on the construction of the English statutes of distribution, which are in substance the same, many points have been ruled, and to these, it will be only necessary briefly to advert. The cases are classed under three heads.

1st. Where none of the intestate's children are dead.

(Earnest and others, Adm. *v.* Earnest and others.)

2d. Where the intestate's children are all dead, all of them having left children.

3d. Where some of the intestate's children are living, and some dead, and such as are dead have left children.

In the two first classes the parties are said to take *per capita,* or in other words, equal shares in their own rights; but in the last case, the grand-children take *per stirpes,* that is to say, not in their own right, but by representation.

This case is one of the last description, and as the plaintiffs entitle themselves as representing their parent only, they must take the share which descended to them, with all the burden with which it would have been charged, had their parent been living.

The primary object of the act is *equality* in the different branches, springing from the common ancestor; and this effect is produced by placing the grand-children so far as the other heirs are concerned, but no further, in the place of their respective parents. It has been decided in *Proud* v. *Turner,* 2 *P. Wms.* 560, that if a child who has received any advancement from his father, shall die in his father's life-time, leaving children, such children shall not be admitted to their father's distributive share, unless they bring in his advancements, since as his representatives, they would have no better claim than he would have had, if living. As the issue stands in the place and stead of the father in cases of an advancement, there could be no reason why they should be in a better condition than their father would have been, if he had claimed his distributive share when largely indebted to the estate, of which he desired to participate. 3 *Bacon's Ab.* 75. 1 *Equity Cases Abridged,* 249. *Walsh* v. *Walsh, Precedents in Chan.* 54. *Toller,* 374. 378.

The disposition thus made of the first point, makes the second of but little importance. For the administrators admit that these notes although *prima facia* evidence of a debt, were intended as an advancement: and this it is no longer the interest of the plaintiffs to deny, for it makes this difference to them, that as a debt, they must account for principal and interest; but as an advancement for principal only.

But it is said the question of advancement, can only be settled in the Orphans' Court. That it may be settled in that court, there is no doubt; but that it *must,* is not so clear. An administration account, is an exhibit of the estate of the intestate of which an advancement is properly no part. A child to whom an advancement has been made, cannot be called on to supply a deficiency of the estate for the benefit of either creditors, or legatees, for that is no part of the assets of the estate. The act does not divest the child of any property which has been given to him, however unequal it may have been, or how much soever it may exceed the residue; he may if he pleases, keep it all. If he be not contented, but would have more, then he must bring what he has before received, as the law expresses it, into *hotch pot,* that is, into the general mass of the

(Earnest and others, Adm. *v.* Earnest and others.)

property to be divided.    But a child is not compelled to bring the amount of his advancement into hotch pot, until the balance has been struck, and the amount of the surplus to be distributed, has been ascertained.    When the value of the estate is known, if he is not satisfied with what he has received, he must account for the amount he had already been advanced; when the balance is struck and distribution of the surplus is to be made, then, and not till then, it becomes important to ascertain the amount which each of the heirs or distributees has received, either from the administrator or the ancestor.

Distribution, is usually made either under the 13th or 16th section, of the act of 1794, that is, either with or without an application to the Orphans' Court, taking a bond with sufficient securities, to indemnify the administrator against any debts that might afterwards be recovered against the estate.    When an application is made to the Orphans' Court, they no doubt would have power to inquire into and settle the amount of the advancements, and to make a special decree ascertaining the respective rights of each, and the persons to whom distribution should be made.    But it has not been usual to make a special decree, but the practice with some exceptions in the Orphans' Court, has been to make a general decree, that the balance be distributed according to law, leaving it to the administrator, taking the security prescribed by the act, to pay to each person entitled, the amount of his distributive share, or in case of difficulty, to settle the right of the respective heirs in a suit in the common law courts.    Where the advancement is of a certain value, as of a sum of money, either the administrator or the Orphans' Court, can settle the distribution without difficulty; when it is uncertain, as a tract of land, for example, a jury would seem to be the appropriate tribunal.    In some cases it must be admitted, a settlement in the Orphans' Court has an advantage over a common law tribunal, as the Orphans' Court acting as a court of equity, have the power to bring all the parties before them, and can settle the controversy by one decree, as for example, when several of the children have been advanced, and a controversy exists as to the amount or value of the advancement of one or all of them, the Orphans' Court can and ought to take jurisdiction of the cause.    When some of the heirs reside out of the state, the manner of proceeding is prescribed by the act of the 13th of March, 1815.    But where all the heirs reside in the state, there is no statutory regulation.    The inconveniences which caused the enactment do not exist here, and in such cases the manner of proceeding prescribed by the act of 1815, may furnish a safe rule.

In the latter case, the amount which each had been advanced, may be readily ascertained by application to the parties, or by application to the Orphans' Court, with notice to the heirs.    But this can be necessary only where the administrator has notice, that

(Earnest and others, Adm. *v.* Earnest and others.)

some of the heirs have been advanced, for when he makes distribution, either with or without the sanction of the court, but without notice of any advancement made by the ancestor, he should be protected. And this would seem to be equitable, for all that an administrator has a right to require from the distributees, under the act of 1794, is an indemnity against debts that might be afterwards recovered from the estate.

Judgment reversed, and a *venire de novo* awarded.