## CARTER *v.* TRUEMAN.

Under the act of 1834, an administrator *de bonis non* is entitled to recover from the representatives of a former administrator the balance of an administration account for the purpose of distribution, although the fund consist of the surplus proceeds of real estate sold by the sheriff under an execution, and the account was settled prior to the act of 1834.

And voluntary payments to persons claiming to be, but who were not, next of kin, will be no defence.

Nor is it necessary to show debts remain unpaid.

The act of 1794, limiting the right of representatives, &c., to claim to seven years, does not extend to the surplus of a sheriff's sale of the decedent's real estate.

The intention of the decisions reversing the rule of Steele *v.* The Phenix, was to restore the common-law rule of competency of witnesses.

The widow of an intestate releasing to the administrator without consideration, and with an avowed intention to make herself competent, is a competent witness for the administrator to prove her marriage in an action to recover the proceeds of the intestate's real estate from the representatives of a former administrator, which right of recovery mainly rested on the fact of the marriage.

In error from the District Court of Philadelphia.

*Jan.* 24—26. This was an action of debt by Trueman, administrator *de bonis non* of Isaac Trueman, against Carter, administrator of Elizabeth Trueman, to recover money received by Elizabeth, as administrator of Isaac Trueman. The first count was for the balance of an administration account settled in the Orphans' Court in 1828;

the second was in debt generally for money received as administratrix, being proceeds of real estate. The defendant pleaded an administration and distribution of the fund, (being the surplus proceeds of real estate of Isaac, the intestate, sold by the sheriff, remaining after payment of debts and liens,) by payments to Elizabeth, the widow, and to the sister, nephews and nieces of the in testate, who were his next of kin, and persons lawfully entitled under the act of Assembly. The plaintiff traversed the allegation that the payees were next of kin, &c., and this issue was found for him.

The defendant also pleaded the same plea, with an additional averment that, after the said distribution, more than seven years elapsed, and none of the intestate's relations, or persons concerned, made legal claim to any share within seven years, by means whereof they and the plaintiff were barred, &c., under the statute. To this the plaintiff replied, that the persons to whom payments were made, were not widow or heirs, and that, at the death of Isaac Trueman, he left a son who made lawful claim within seven years. The issue joined, as to the claim, was deemed immaterial by the court below, who considered no evidence had been given in support of it.

It appeared on the trial, before FINDLAY, J., that Isaac Trueman was married in 1809 to Elizabeth, the defendant's intestate, with whom he lived until his death in 1827. Afterwards proceedings were had upon a mortgage given by him, and certain real estate sold by the sheriff, the surplus of which was paid over to his widow as administratrix, and was the fund now in question. In 1828, she settled an account in the Orphans' Court showing a balance for distribution. In that account, she stated there was a claim for $101, made on the estate, which was resisted under the belief it was unjust. This report was confirmed in Aug. 1828. The balance of this account was distributed by her without an order of the court in the same year—the administratrix retaining one-half as widow, and paying the residue among the sister, and nephews, and nieces of Isaac Trueman. In 1844, the administratrix dying, letters of administration de bonis non were taken out on the estate of Isaac Trueman, and this action commenced.

The plaintiff having given evidence by reputation of a marriage between Isaac Trueman and one Elizabeth Pearce in 1801, and proved the birth of a son who was still living, called Elizabeth Taylor, the alleged wife, to prove the marriage. On objection to her as interested, a release by herself and husband to the plaintiff, executed at the time of her examination under a commission and for a

nominal consideration, was exhibited. On her *voir dire*, she said she executed the release for the purpose of qualifying herself as a witness; she had no other reason. Her admission, as a witness, was the only question of evidence material here.

The verdict, which, under the charge, was for the entire balance of the administration account, with interest, having established the first marriage and the legitimacy of the plaintiff, who was the son of Isaac Trueman by his first marriage, the questions raised on the record were, whether the plaintiff could maintain the action? 2. Was the claim, or any part of it, barred by non-claim for seven years, after a payment, by way of distribution, to those who were not next of kin? 3. Was Elizabeth Taylor a competent witness?

*McMurtrie* and *McIlvaine*, for plaintiff in error.—Prior to the act of 1834, the plaintiff could not sue; the right of the administrator *de bonis non* is there extended to all goods, moneys, and assets of the decedent *remaining* in the hands of the former administrator. Does the right to sue for a devastavit pass thereby? It was held not to, in Thomas v. Reigel, 5 Rawle, 281, under the act of 1797, which gives the same rights to administrators appointed in the room of one resigning the office as are given by the act of 1834 to the plaintiff. The court then said that, where money had been paid away, though improperly, it could not be said to remain in the hands of the administrator. This right was vested in the creditors and distributees, (Packman's Case, 6 Rep. 19,) more than six years before this suit brought, and it cannot be supposed the right was to be revived by the appointment of a trustee. The fund, too, was not received as administrator appointed by the register, (Kendall v. Lee, 2 Penna. Rep. 483,) but as a special officer appointed by the court under whose process the sale was made. This peculiar office does not pass to the administrator *de bonis non*, (16 Serg. & Rawle, 337,) whose sureties would not be liable: 1 Watts, 437; 8 Watts, 159, 214. The act of 1834, moreover, had reference to the payment of debts merely, which is evident from it directing judgment to be for the balance of the administration account. That account does not admit payments by way of distribution: Rittenhouse v. Levering, 6 Watts & Serg. 190; 5 Barr, 97; hence, on the construction contended for, even rightful payments in distribution could not be credited. The proper construction would, therefore, seem to confine the plaintiff's right to the assets actually in hand and belonging to the estate. The act, moreover, excludes all cases of decedents prior to its passage,

so far as a remedy was given by prior acts, and that there was a remedy here appears by the act of 1794, s. 1; 3 Smith, 144.

But the bar of the statute is more important. It extends to all persons interested, claiming shares in the estate. It is the settled rule that, if a statute of limitation includes a subject matter by its words, equity cannot make an exception: Beekford *v.* Wade, 17 Ves. 87; Bombay *v.* Boyer, 14 Serg. & Rawle, 256. There is every reason for including the present fund, though it happens to be the proceeds of land, since the statute of limitations does not extend to it, being a trust; and no presumption of payment can arise after proof of mispayment: Levers *v.* Van Buskirk, 7 Watts & Serg. 71. The persons here claiming beneficially were fully barred before the right was given to the plaintiff. The only question is, is the property included? When received by the administrator, it was personalty of the decedent, though by statute distributable as realty, since it is only for the purpose of ascertaining the person entitled that the doctrine of equitable conversion is used. The qualities of property all attach, though, to ascertain the owner, equity will consider property converted in certain cases: Oldham *v.* Hughes, 2 Atk. 454; Burgess *v.* Wheate, cited 2 Ves. jun. 174; Flanagan *v.* Flanagan, Ib. 176; Hooper *v.* Goodwin, 18 Ves. 166; Hewitt *v.* Wright, 1 Bro. C. C. 86; Curling *v.* May, stated 3 Atk. 255, 2 Ves. jun. 172; Dyer *v.* Cornell, 4 Barr, 359. In this state the administratrix was obliged to receive the fund; and she received it as personalty, though distributable as realty would have descended: Commonwealth *v.* Rahm, 2 Serg. & Rawle, 377; Guier *v.* Kelly, 2 Binn. 298; Commonwealth *v.* Mateer, 16 Serg. & Rawle, 416; Grider *v.* McClay, 11 Serg. & Rawle, 232; 4 Watts, 73; 7 Watts, 563; 6 Watts, 33. If not personalty, the administrator would not be protected by a refunding bond, since it is for that only such a bond can be demanded; and protection for mispayment is constantly afforded by courts to trustees: Hele *v.* Stowel, 1 Ch. Ca. 126; In re Wilson, 4 Barr, 430; Grier *v.* Huston, 8 Serg. & Rawle, 402; Earnest *v.* Earnest, 5 Rawle, 220.

The witness was open to greater objection than has been held sufficient to exclude in several cases, particularly Reading *v.* Johnson, 7 Watts & Serg. 325; Patterson *v.* Reed, Ib. 145; Grayson's Appeal, 5 Barr, 395; Clover *v.* Painter, 2 Barr, 46; Asay *v.* Hoover, 5 Barr, 37, 38; 5 Barn. & Cress. 188. Prior to 1834, she must have been a legal plaintiff for her share. She is now a *cestui que trust,* owning part of the fund. She released to her own son, who was her trustee—without consideration—at the moment she was

called to testify, and for the very purpose of qualifying herself as a witness. This release operated, moreover, by way of passing an estate to her son, as the other distributee : Newlin *v.* Newlin, 1 Serg. & Rawle, 279.

*J. Clarke Hare*, contrà.—Executors and administrators, receiving funds, are liable like other defendants at common law : rightful payments only are a defence. The cases of mispayments cited are of trusts expressly for those receiving, which were voidable by others ; but until avoided the payments were proper. The right of the plaintiff is rested on the statute, the words of which are as full as possible, and include every possible claim against the deceased administrator in virtue of the estate. It is not confined to the balance of an admitted account, but what is legally due by the administrator is to be recovered. If creditors or distributees proceeded for a *devastavit*, as it is agreed, they would be met by an admission of assets, which would defeat their action. This question is, however, no longer an open one : Drenkle *v.* Sharman, 9 Watts, 485 ; Commonwealth *v.* Strohecker, Ib. 479 ; Weld *v.* McClure, Ib. 495 ; Commonwealth *v.* Barnitz, Ib. 257. Nor does the nature of the fund make any difference—it is personalty of the intestate *from the date of the sheriff's sale.* After a receipt by an administrator, what reason can there be for a separate course of transmission, for purposes of settlement of the estate, from that of other personalty. The difficulty of requiring two accounts to be kept would be almost insurmountable. As to the allegation that the debts are paid, it is submitted, that is not traversable : Morrison's Case, 9 Watts & Serg. 116 ; Commonwealth *v.* Forney, 3 Watts & Serg. 353. It cannot be that an administrator's right is to depend on that, unless there has been a rightful distribution ; nor then, unless after a final settlement of the administration account. In Commonwealth *v.* Mateer, the administrator was held entitled to recover the proceeds of land from an administrator *pendente lite.*

The limitation to claims for shares does not extend to this case. The plaintiff is not named therein, nor does it extend to this fund : Blackmore *v.* Gregg, 2 Watts & Serg. 182. It is confined to personalty existing at the death of the intestate, and cannot include a fund which might have no existence until after the period had elapsed. The law preserves the two species of property entirely distinct in all matters relative to the distribution, even after conversion of the realty. But supposing it otherwise, the plea is defective, in not averring payment *bona fide*, and without notice

of our right. Had these averments been there, and found for the plaintiffs, it would scarce have been a question: Logan v. Richardson, 1 Barr, 372.

It is submitted the object of this court, in overturning Steel v. The Phenix, was to restore the common-law rule of incompetency of witnesses. A general rule must be adopted. Parties to the record in all cases, and those who may use the verdict and judgment as evidence, or against whom it may be used, are excluded. If then the common law was intended to be restored, the question is a plain one: the witness was not a party, nor liable for costs. She was interested in part of the fund to be recovered. That she discharged; and all *legal* right to a benefit was gone. Can courts of justice with safety inquire further? The books are full of this subject: Cornell v. Vanartsdalen, 4 Barr, 364, was nearly similar. Viner, Abr. *Ev.* F. pl. 53; Heath v. Hall, 4 Taunt. 326; Carter v. Abbott, 1 Barn. & Cress. 444; Stall v. Catskill, 18 Wend. 466; Bemis v. Charles, 1 Met. 440; Gillespie v. Gillespie, 2 Bibb. 89; 13 Mass. 391; 1 Serg. & Rawle, 275; 16 Serg. & Rawle, 315; 9 Johns. 123.

*March* 13. BELL, J.—It is certain that prior to the enactment of the thirty-first section of the act of 24th February, 1834, (Purd. 477,) this action by the administrator *de bonis non*, &c., of Isaac Trueman, deceased, could not have been sustained against the estate of the first administratrix, under the circumstances that have place here. As the law stood before that statute, actions to recover the balance appearing to be due upon the face of the administration account settled by Elizabeth Trueman, could only have been maintained by the creditors, or next of kin of the original intestate; and this, whether the administratrix had been guilty of a *devastavit* or not: Packman's Case, 6 Rep. 19; Wankford v. Wankford, Salk. 306; Coleman v. McMurdo, 5 Rand. 51; Potts v. Smith, 3 Rawle, 369; Commonwealth v. Strohecker, 9 Watts, 479; Thomas v. Reigel, 5 Rawle, 281. But the law of this state has been, in this particular, changed by the act of Assembly, to which I have referred, for reasons that are so fully and emphatically expressed by Mr. Justice Kennedy, in Drenkle v. Sharman, 9 Watts, 485, as to render any examination of them here unnecessary. By that case, following the provisions of the act, it is settled that a judgment-creditor of a decedent,—and distributees and legatees stand in the same category—cannot bring an action to recover his judgment against the administrator of a deceased ad-

ministrator *de bonis non* of the original decedent, though an account had been settled, showing a balance due to the first estate in the hands of the last administrator at the time of his death, applicable to the payment of debts; but that the proper party to recover and pay such balance to the parties ultimately entitled to it, is a new administrator *de bonis non*. The doctrine of this case is, under the statute, indisputable, and its effect is to subrogate the substituted administrator to the common-law rights of creditors, next of kin, and legatees, for the benefit of all interested in the fund, whether it had been misapplied by the original administrator or remained in his hands at the time of his death. Nor does it make any difference that in this instance the account, ascertaining the balance sued for, was settled and confirmed, and a part of the fund paid over by the administratrix to the brothers and sisters of her intestate, long before the passage of the act of 1834. For every purpose of remedy, the section under consideration is as applicable to pending cases which originated before its enactment, as to those which date their inception since that time, as is clearly shown by Drenkle *v*. Sharman, *suprà*. Neither will the fact of such payment, improperly made, interpose an objection against the plaintiff's right to recover. To say nothing of the proof of actual notice of the first marriage and the legitimacy of its issue, presented by the record, but which, perhaps, did not enter into the consideration of the court below, it appears the administratrix undertook, upon her own responsibility, to ascertain who were next of kin to her intestate, and to make distribution accordingly. She was not bound to do this; for, although it has not, perhaps, been usual to apply for a special decree of distribution under the laws regulating the descent and distribution of intestate estates, (Earnest *v*. Earnest, 5 Rawle, 220,) yet in cases of doubt or difficulty the safety of an administrator requires he should call for such a decree; and if he assume to distribute the fund in his hands without it, it is at his peril. He may do so if he will; but then he has no other protection than in the correctness of his action, or the acquiescence of the parties in interest. These remarks apply with increased force to that portion of the fund retained by the administratrix herself, in her assumed character of lawful widow of the intestate; for if a mispayment to third persons will not protect her against the claims of her successor in the administration, of course an unauthorized retention by her, though by virtue of a supposed right, cannot be set up as a bar.

But it is urged by the plaintiff in error, that the 31st section of the act of 1834 was intended to apply only in those cases where debts still remained due from the original estate, and therefore requiring the intervention of an administrator to avoid circuity and multiplicity of action, and for their more convenient payment. It may be that where it is conceded no debts remain to be satisfied, a distributee may be permitted to recover his share of an ascertained balance by action immediately against the personal representative of the first administrator; but even this is more than problematical in view of an express provision of the statute to be presently brought to notice. In the case at bar, it would seem a debt was claimed as due from the estate by a certain Michael H. Anthony, which remained in dispute. Of the nature of this claim we have no information, nor whether it is still urged. But waiving this, as not to be insisted on, I think it clear that where, as here, the suit is by an administrator *de bonis non*, claiming to recover the fund which has or ought to have been in the possession of his predecessor, it is not competent to the representative of the latter to suggest the non-existence of debts as a bar to the action. To permit this, might, and probably would, in a variety of instances, lead to the trial of many collateral issues, to settle the disputed fact of debt or no debt; and that, too, when the supposed creditors could not be made parties to the proceeding. Such a practice would be attended with so much inconvenience and confusion that it ought not to be admitted, unless very clearly sanctioned by the statute. But this is so far from being the case, that the language of the act imports a right of action in the existing administrator without reference to the indebtedness of the original estate. It is, "Administrators *de bonis non*, with or without a will annexed, shall have power to demand and recover from their predecessors in the administration, or their legal representatives, all moneys, goods, and assets remaining in their hands, due and belonging to the estate of the decedent," &c. In this there is neither exception to nor restriction of the power of the substituted administrator, nor any thing to point to a distinction, in this particular, between assets unencumbered and those which may be applicable in payment of debts. In the cases ruled upon the statute, the second administrator is, accordingly, treated as standing, indifferently, in the place of creditors and distributees. It follows that the representative of the deceased administrator cannot set up the non-existence of debts to defeat the statutory right of the successor to demand and recover from the

former all moneys, goods, and assets, due and belonging to the estate of the decedent.

But the defendant below seeks to prevent the plaintiff's recovery in this action upon another ground. It is urged that the balance ascertained by the administration account is derived from the proceeds of the real estate sold under a judgment recovered to enforce payment of a mortgage with which it stood encumbered in the lifetime of the decedent, and that this cannot be deemed either goods, money, or assets, within the provision of the act. This notion admits of very easy refutation. Though in England the price of lands cannot be brought into an executor's account in a course of administration as assets, in Pennsylvania, from the very beginning, the rule has been different. With us, land has always been deemed assets for the payment of debts; and it has therefore ever been the practice, when the lands of a decedent are sold by execution, to pay the surplus remaining after the satisfaction of liens to the executor or administrator in whose hands it is liable for the payment of other debts: Guier *v.* Kelly, 2 Binn. 298. In Kendall *v.* Lee, 2 Penna. Rep. 486, 487, the difference in this respect between a sale by order of the Orphans' Court for the payment of debts and one made by virtue of an execution, is pointed out; and it is observed that an administrator is entitled to receive the surplus avails of an execution though he give no additional security, for the right is a consequence forced on the courts from necessity, arising from want of legislative enactment. This right of the administrator is also conceded in The Commonwealth *v.* Rahm, 2 Serg. & Rawle, 375; though it is said if the heir can make it apparent there are no debts remaining unpaid, the court will award the surplus to him, providing, at the same time, for the safety of creditors, should any such appear in future.

It will be remarked, that the right to recover the surplus proceeds of land sold, does not depend, at common law, upon the fact that the administrator has given security for its due application, the register being without power to exact such security. The right results from the legal axiom that, with us, lands, like chattels, are assets, and, when turned into money, liable to be brought into administration as such. The want of security was felt to be an inconvenience; but this was not permitted to operate to prevent the fund from passing to the administrator. Did the question rest here, no difficulty could be felt in pronouncing the plaintiff's right to recover, since, by the express words of the act of 1834, he is empowered to claim all moneys, goods, and *assets;* and it can make no difference

that these assets sprung originally from realty, for in every judicial sale for the payment of debts, whether of chattels or lands, the money raised is in course of administration, and for that purpose goes to the personal representative: Grider v. McClay, 11 Serg. & Rawle, 224; Commonwealth v. Pool, 6 Watts, 32.

But we are not left to rest on this reasoning and these authorities. Acting, probably, on the hint dropped in Kendall v. Lee, the legislature, by the 33d section of the same law of 1834, provided that, "in all cases where property, real or personal, of a decedent, is sold upon an execution, and more money raised than is sufficient to pay off liens of record, the balance shall be paid over to the executor or administrator for *distribution*; but before any such payment shall be made, such executor or administrator shall give bond to the satisfaction of the court, conditioned for the legal distribution of such money: Provided always, that such money shall be distributed as the real estate, of which it is the proceeds, would have been." Now, by the very terms of this section, the proceeds of realty go to the executor or administrator for the purpose of distribution, whether that be by its application in payment of debts, or in satisfaction of distributees; and as, by the thirty-first section, an administrator *de bonis non* may call for any fund which his predecessor may legally receive, he is, of course, entitled to the avails of realty left undisposed of by the first administrator. (See Morrison's Case, 9 W. & S. 116.) These sections are, therefore, decisive of this point of the present controversy, if, by retroaction, they embrace cases originating before, but still pending at the time of their enactment. That the first of them is retrospective, is determined by Drenkle v. Sharman; and the argument upon which that decision rests, also proves the last is invested with retroactive capacity. If to this be added the consideration that the latter section is, for the most part, but an affirmance of the old law, with a superadded stipulation for security, no hesitancy can be felt in bringing the present case within it.

Another distinct ground of defence is, that the plaintiff is barred of his action by the limitation provided in the eighteenth section of the act of the 19th April, 1794, requiring parties having an interest in the estate of a decedent to make claim to their respective shares within seven years from the death of the intestate, under penalty of forfeiture. But this provision is applicable to the personal estate of the decedent only, and has no operation to divest an interest in realty: Blackmore v. Gregg, 2 Watts & Serg. 182. Its object is to protect administrators in the event of a *bonâ fide* dis-

tribution of the personal chattels and *choses* in action of the deceased, without notice of outstanding claims; but it cannot be interposed in aid of a disposition even of personalty made *mala fide*: Logan v. Richardson, 1 Barr, 372.

To bring the present case within the influence of the statutory limitation, the defendant is forced to insist that the proceeds of realty sold, either by order of the Orphans' Court for payment of debts, or under an execution, is in this state considered as personalty, and is so to be treated. It is true, as we have in part seen, that for certain purposes, our decided cases recognise this transmutation, but it is always with the qualification that such proceeds shall be distributed to the same persons to whom the land would have descended had it not been sold, and in accordance with this is the *proviso* of the 33d section, already cited. In Clipper v. Livergood, 5 Watts, 115, it is said that though real estate converted by an order of the Orphans' Court, is considered as money, yet when it can be traced to the source from whence it came, it will, for the purpose of distribution, be treated as realty. It is not, therefore, to be regarded as money for every purpose, and least of all with the view of bringing it, in the hands of an administrator, within the operation of the limitation given by the act of 1794. It is obvious the framers of the section under review had not in contemplation the proceeds of land. This is apparent from the impossibility of applying the provision to such proceeds without manifest absurdity. The limitation which it gives begins to run from the death of the intestate, but lands descended may, and frequently do, remain unconverted for many years after the death of an intestate. During this period it will not be pretended the statute can take effect. When, then, is it to commence to run? Will it be answered, from the moment of transmutation? But for this position no warrant is to be found in the terms of the act, and there is nothing in its spirit which would justify its extension by equitable construction. Nay, in this particular, there is no room for construction, for the moment when the disqualifying period is to begin is unequivocally marked. But as, in the case of lands descended, it cannot then begin, it necessarily follows it cannot begin at all. The District Court was, therefore, right in ruling that the issue which raised the question of claim within seven years after the death of the decedent was immaterial.

The only remaining supposed error insisted on, is assigned in the admission of Elizabeth Taylor as a witness for the plaintiff below. The objection to her competency is based upon the doc-

2 E

trine of Post *v.* Avery, and the other kindred cases. But the great object of these determinations was to get back to the common-law rule, which had been unadvisedly departed from in Steele *v.* The Phœnix Insurance Company. In correcting a mistake of this character there is always danger, unless great watchfulness be used, of transcending, in the opposite direction, the true line of distinction. We must be careful not to commit this error, more especially as it would be in contravention of the modern policy, which properly seeks to extend the rule of competency, rather than to multiply instances of exclusion. Now, by the long-established rules of evidence, all who have no interest in the subject-matter of a suit, or, having had such, are divested of it before being called to the book, are competent witnesses. In the present condition of the question with us, it may perhaps be profitable to glance at a few of such cases decided under this rule, as approach most nearly to that in hand. Among these are the following. A creditor who has assigned his interest in a fund is a competent witness to increase it : Heath *v.* Hall, 4 Taunt. 326. A bankrupt is a good witness to prove money lost at play by him, in an action brought by his assignee to recover it back, after releasing to the assignee all interest in the surplus : Carter *v.* Abbott, 1 Barn. & Cress. 444. A stockholder who has sold out or assigned his shares in order to become a witness, is admissible as such for the company : Stall *v.* Catskill, 18 Wend. 475 ; Smith *v.* Bank of Washington, 5 Serg. & Rawle, 322. A devisee having released his interest is competent to prove the validity of the will : Kerns *v.* Soxman, 16 Serg. & Rawle, 315 ; and so is a legatee : Vin. Abr. tit. *Evidence,* F. pl. 53 ; Newlin *v.* Newlin, 1 Serg. & Rawle, 275 ; Cornell *v.* Vanartsdalen, 4 Barr, 373. These cases are strictly analogous to the present, and the last is particularly valuable as a very recent decision, and since most of the cases on which the plaintiff in error relies were ruled. But the very point under examination has been more than once adjudicated in favour of the testimony. Thus in Boynton *v.* Turner, 13 Mass. Rep. 393, it was ruled that the son of an intestate who had released and transferred to the administrator all his interest in the fund, was a good witness. So in Woods *v.* Williams, 9 Johns. 123, the husband of an intestate was admitted to testify in an action brought by her administrator, after releasing to the plaintiff any sum which might be recovered, and the same point was similarly ruled in Jackson *v.* Brooks, 8 Wend. 426. These familiar authorities would seem to be decisive. But it is thought the rule recognised in Asay *v.* Hoover, 5 Barr, 37, is in conflict with them.

This is a mistake. That was a feigned issue, in which all having a pecuniary interest in the fund were regarded as parties in fact, and the observations made in the opinion of the court are to be accepted with reference to the particular case. Thus viewed, there is nothing in them which militates against the decision of the court below ad-. mitting the witness. Nor does the fact that she assigned her interest in the fund sought to be recovered, to become a witness, or that the assignment may have been colourable, constitute a valid objection to her, for these are matters of which the court do not undertake to judge, except in case of parties to the record. In all other instances they go rather to the credit than the competency of the witness: Cornell *v.* Vanartsdalen, *suprà.*

What has been said disposes of all the points raised on the argument in this court. It is, therefore, unnecessary to recur with more minuteness to the particular errors assigned.

Judgment affirmed.