## Vogest's Estate

Before Van Dusen, P. J., Stearne, Sinkler, Klein, Bolger, and Ladner, JJ.

*Henry D. O'Connor*, for exceptant.

*Bertram Bennett*, of *Jenkins & Bennett*, contra.

*Joseph N. Corcoran*, Special Deputy Attorney General, for Commonwealth.

KLEIN, J., December 24, 1937.—Decedent died intestate on April 5, 1930. She was survived by a husband by a second marriage, and by three grandchildren who were children of a deceased son by the first marriage. At the audit of the administrator's account the whereabouts of the husband was unknown. One half of the estate was awarded to the grandchildren and the husband's one half directed to be retained by the administrator for future

accounting. Subsequently, an escheator was commissioned by the Commonwealth who instituted proceedings to have the missing husband declared a presumed decedent. These proceedings were referred to a master who found that the presumption of death had not been established. An account was then filed of the half of the estate which had been retained. At the audit of this account the auditing judge awarded the fund to the three grandchildren because of the missing husband's failure to lay claim to his distributive share within seven years from the date of the decedent's death.

The sole question raised by the exceptions, which were filed at the direction of the learned auditing judge, is the propriety of this award.

Determination of this question involves construction of section 21 of the Intestate Act of June 7, 1917, P. L. 429, which reads as follows:

"All relatives and persons concerned in the estate of any intestate, who shall not lay legal claim to their respective shares of the personal estate within seven years of the decease of the intestate, shall be debarred from the same forever".

The meaning of this section is not nearly so apparent as a cursory reading would indicate, and the strictly literal interpretation of the auditing judge results in a conclusion which we believe was not intended by the legislature.

This section is an inheritance from colonial days and has remained with us through two and a half centuries of unscientific and haphazard legislation. It is a re-enactment of one of those early laws affecting the orphans' court which caused Mr. Justice Woodward in Horner & Roberts v. Hasbrouck, 41 Pa. 169, 178 (1862), to say:

"What confusion and embarrassment had resulted out of the multitudinous and ill-digested legislation, touching this most important court, may be inferred from what Judge Duncan was forced to say in 1824 in McPherson v. Cunliffe, 11 S. & R. 432: 'Nothing so much requires legis-

lative attention as the proceedings of the Orphans' Court, for so sure as we descend into our graves so sure into this court we must come; and the man would be a public benefactor who would devise set forms and furnish directions in conducting the vast business in these courts, where every day finds so deplorable a system of confusion.' "

The first appearance of a limitation of this nature in our statutes is found in the 110th law passed in 1683, just two years after Charles II granted Pennsylvania to William Penn. This act imposed a limitation of three years. This same limitation is found in the Act of 1684 (172d law) and the Act of 1693, 3 Sm. L. 154. The Act of 1700, 3 Sm. L. 155, increased the limitation to seven years. Almost the identical language used in the section under discussion is found successively in section 5 of the Act of 1705, 3 Sm. L. 157, section 18 of the Act of April 19, 1794, 3 Sm. L. 143, and section 19 of the Act of April 8, 1833, P. L. 315.

The commissioners appointed to codify and revise the law of decedents' estates, in the foreword to their report to the General Assembly in 1917, made the following observation:

"In our endeavor to fulfill the difficult and responsible task thus imposed upon us, we have in many ways been guided by the example of the Commissioners of 1830, and particularly in this: We have avoided making any change in the phraseology of the existing statutes unless some definite and substantive change in the purpose of the law itself was intended, even where some other words or expressions might seem better adapted to express that purpose. Our obvious reason has been that the phraseology of the older statutes, much of which the Commissioners of 1830 copied from prior statutes as early as those of 1705, 1794 and 1797, has acquired through long use and judicial decision a settled and determinate meaning, which should not be disturbed through any desire to attain mere elegance of diction."

It is indeed unfortunate that the wise commissioners who so masterfully drafted the so-called "Seven Sister Acts" did not make closer study of section 21 of the Intestate Act, supra. Its exact meaning is just as obscure today as it was in 1683. We have carefully studied the few decisions which attempt to construe it and we must confess that they are not entirely free from doubt and uncertainty.

We cannot accept Blackmore v. Gregg, 2 W. & S. 182 (1841), upon which the auditing judge relied, as authority for his conclusion. That case did no more than decide that the eighteenth section of the Act of April 19, 1794, supra, was applicable only to the personal estate of an intestate and not to real estate. As a result of this and following decisions, the words "of personal estate" were inserted in section 21 of the Intestate Act of 1917.

The eighteenth section of the Act of 1794 was again before the Supreme Court for construction in Logan v. Richardson et ux., 1 Pa. 372 (1845). In that case the administrator's account was duly confirmed by the orphans' court, but the accountant failed to comply with the award and pay to his sister her distributive share. The court there said at page 374:

"This act applies to the personal, and not the real estate of the intestate, and is intended to protect administrators, and the personal representatives in the event of the distribution of the estate by the administrator without notice. When payment of the funds is made in good faith, it cannot afterwards be disturbed by an heir who has neglected to claim his share in proper time. The administrator has a right to rely on the act, in such case, for his shield and protection. But it never was designed that it should be used for the unjust purpose of enabling the administrator to put the money, against all good faith, in his own pocket. The administrator is a trustee for the next of kin, and, while a trust subsists, the statute does not continue to run between the trustee and cestui que trust."

To the same effect, see Carter v. Trueman, 7 Pa. 315 (1847), and Glasz's Estate, 43 L. I. 46 (1886).

This limitation was again discussed in Burd's Execs. v. McGregor's Admr., 2 Grant 352, 365 (1857), in which the court came to the conclusion that it did not apply to creditors. The court said:

"Its terms show very distinctly, that it operates upon distributees only, and not upon creditors; and the construction heretofore given to that statute, is, that it was not intended to enable an administrator to keep the money of the estate in his own pocket. It was passed for the purpose of protecting him from being compelled to pay the money a second time, after he had distributed it by mistake to persons not entitled, or had given to some distributees more than their respective shares, to the exclusion of others, who would have been entitled, had they presented their claims in due time."

Logan v. Richardson et ux. was also cited and adopted in Bear's Estate, 9 Pa. Superior Ct. 492 (1899), which involved the nineteenth section of the Act of 1833, supra. In that case the decedent died intestate in 1880. The account of the administrator was confirmed in 1881, and distribution directed to be made to first cousins of the decedent. One of the cousins was absent and unheard of for a period of years sufficient to raise a legal presumption of her death. However, the evidence failed to show whether the legal period, at which the presumption would arise, occurred before or after the death of the decedent. Her share was accordingly awarded to her administrator to be appointed. In 1886, the administrator paid this share to an attorney who falsely represented that he was the missing cousin's administrator. The distributee died in 1893 and her duly appointed administrator made claim for the money awarded her. Judge Porter, speaking for the court, in upholding the claim, said at page 497:

"The Act of April 8, 1833, P. L. 315, sec. 19, providing that all suits of an intestate's relations shall be barred in

seven years on failure to present a claim, does not apply here. The claim was before the court, inasmuch as an award was made and a decree entered. . . . Here the trust relation of the accountant continued until payment was made to a legally constituted administrator."

A study of these cases leads us to the following conclusions: (*a*) That the limitation never applied to the intestate's real estate; (*b*) that it applied only to relatives and not to creditors; (*c*) that it has for its object the protection of administrators in the event of a bona fide distribution of the personal assets of the deceased without notice or knowledge of the existence of next of kin entitled to participate in the distribution of the estate.

The precise question which confronts us has apparently never been raised before in our courts, that is, whether the court, before distribution, may direct a forfeiture of the missing relative's distributive share and award it to the remaining next of kin. Our study of the cases leads us to the conclusion that the legislature did not contemplate such a result.

In the instant case the claim of the missing husband is actually before the court. The administrator, as well as the court, has knowledge of the fact that at the time of the decedent's death she left a husband entitled to take. The fact that he did not appear "to lay legal claim" to his share is unimportant because the administrator stands in a trust relationship to all of the next of kin, and a demand by them is not necessary. The husband, in this case, had the right to sit by without taking any action relying upon the administrator's obligation to deliver to him his distributive share of the estate: Merrick's Estate, 1 Ash. 305.

The uncertainty which existed in 1841 at the time of the decision in Blackmore v. Gregg, supra, with respect to the duties of administrators if decedent's next of kin could not be located, no longer exists. The various escheat statutes enacted by our legislature, and particularly

article XIII of The Fiscal Code of April 9, 1929, P. L. 343, outlines a procedure which is a complete protection for the administrator. Under its provisions it is mandatory upon the fiduciary to follow a course which results in the fund being paid into the State Treasury without escheat. The act completely exonerates him from liability when such payment is made. It also provides machinery for a return of the money to the proper claimant when he appears and makes claim therefor: Section 504.

The exceptions are therefore sustained. Since no exceptions were taken to the allowance of the various claims aggregating $257 and the costs of $234.44 incurred in the proceedings before the master, the award of these items is confirmed. The accountant is directed to pay the balance of the fund in its possession, through the Department of Revenue, into the State Treasury pursuant to The Fiscal Code, supra, sec. 1314. This order is made with the approval of the learned auditing judge, in accordance with his concurring opinion this day filed.

LADNER, J. (concurring), December 24, 1937—When this matter was called for audit the Commonwealth made no claim under section 1314 of The Fiscal Code of April 9, 1929, P. L. 343, 72 PS §1314. The bald question before me was the interpretation of section 21 of the Fiduciaries Act of June 7, 1917, P. L. 447. This section was given this literal interpretation in light of the explanation of the provision of the Act of 1833 of which it was a virtual reënactment (see Blackmore v. Gregg, 2 W. & S. 182 (1841)). But now, in view of the Commonwealth's claim to the right to receive the funds, not by escheat but as unclaimed unawarded funds under the Act of 1929, the question whether section 21 of the Fiduciaries Act, supra, is to be construed as a statute of limitations and thereby operating to debar the husband for the benefit of the other heirs under the facts in this case becomes unimportant.

The right to inherit under the intestate laws is an act of grace of the Commonwealth: Link's Estate (No. 1), 319 Pa. 513, 516; it may be withdrawn, regulated or modified, and statutes of inheritance and distribution changed as the sovereign sees fit. By section 1314 of The Fiscal Code, supra, it has expressly provided that: "Whenever, on the audit or adjudication of the account of any fiduciary, there shall be and remain in his possession any moneys *not awarded to any claimant or* claimants . . . [the] unawarded moneys, or of moneys awarded to claimants the whereabouts whereof or that of their legal representatives the fiduciary has been unable to ascertain, the court having jurisdiction of his accounts may, upon motion, or on its own initiative, in its discretion, order the payment of such moneys into the State Treasury, through the Department of Revenue, whether the statement required to be filed by this section has been in fact filed or not. . . .

"The fiduciary and his sureties shall be relieved from all liability for any funds paid into the State Treasury as the result of proceedings under any provision of this section." (Italics ours.)

Whatever be the correct interpretation of section 21 of the Fiduciaries Act, it must be read in conjunction with and as limited by the foregoing section of The Fiscal Code of 1929. That section covers the precise situation before us and I think that the learned counsel for the Commonwealth is quite right in urging that the Commonwealth is not precluded by the fact that it previously failed in its proceedings to establish an escheat. The proceedings under this section do not depend solely upon the establishment of an escheat, although the auditing judge would seem to have jurisdiction so to find (see Link's Estate (No. 1), supra), but the act may be invoked without a declaration of escheat whenever a fiduciary holds unclaimed or unawarded funds. It is an alternative remedy: see Apsley's Estate, 8 D. & C. 345, Lamorelle, P. J., confirming adjudication of Judge Van Dusen, in which

such construction of the Act of May 16, 1919, P. L. 169, of which section 1314 is a reënactment, was indicated as the probably correct interpretation thereof.

I am therefore willing that the adjudication be modified by awarding the one half of decedent's estate not heretofore distributed, less the deductions allowed, and direct the same to be paid by the administrator through the Department of Revenue into the State Treasury pursuant to The Fiscal Code, supra, sec. 1314, which was stated to be the proper form of the order in Link's Estate (No. 1).